J. C. HARALSON V. BARNEY LANGFORD ET AL

(Case No. 5635.)

1. VENDOR'S LIEN—DEFENCE—FAILURE OF TITLE—A vendee of land under an executed contract cannot remain in possession and successfully defend against a suit for the purchase money without establishing beyond doubt that the title is a failure in whole or in part ; that there is danger of eviction, and such circumstances as would, *prima facie*, repel the presumption that at the time of the purchase he knew and intended to run the risk of the defect. (Authorities cited.)

2. SAME—ALLEGATIONS—See opinion and facts for allegations held insufficient to set up such a defence.

3. SAME—OUTSTANDING TITLE—It is not sufficient for the vendee to show that an outstanding title at one time existed in a third party ; he must also show that it has not passed to his vendor.

4. SAME—EQUITY—See opinion and facts for an answer asking equity and not offering to do equity.

APPEAL from Montague.   Tried below before the Hon. F. E. Piner.

This was a suit to foreclose a vendor's lien on certain land in the possession of defendant, and the case turned upon the sufficiency of defendant's answer.   The petition alleged sale of the land by plaintiffs to defendant; that they conveyed it to him by deed, and that he executed the notes sued on in consideration thereof.   It also admitted payment of $210 on the notes.

Besides the general denial, defendant answered specially, alleging that he bought the land for a cash payment and the two notes sued on.   That when he bought, plaintiff, Barney Langford, assured him that he had a good title to the entire interest in the land; that he was able to, and in fact would, convey to defendant a good title; that defendant relied on the assurance and bought the land on the strength of it, and that he would not have so bought if he had not believed plaintiff's representations were true; and on the strength of the representations he took possession of the land and made permanent and valuable improvements thereon, to the value of $1,000; that,

in fact, plaintiff's title to the land at the time of the sale was defective, and plaintiff well knew it, but that he falsely and fraudulently made such representations to induce defendant to buy the land; that the land was granted by the state of Texas to the heirs of John Higgins, deceased; that the heirs of Higgins were three, one son and two daughters; that one of the daughters was an idiot and *non compos mentis*, and the other a married woman; that the idiot lived in Bexar county, Texas, and the other daughter, with her husband and brother, lived in the Indian Territory; that plaintiff never did own the title and interest of the idiot daughter, and that it was a valid outstanding title; that the only title ever held by plaintiff was a deed purporting to be signed by the married daughter, her husband, and Isaac Higgins, her brother, but that deed was not acknowledged by the grantors, nor its execution proven by subscribing witnesses; that plaintiff had learned the foregoing facts after he bought and improved the lands; that he did not investigate the title when he bought, because, as stated, he relied on plaintiff's assurance, which was false and fraudulently made, and that defendant was in danger of being evicted by the heirs.

The answer alleged as another defect of title that previous to defendant's purchase, plaintiff had sold and conveyed the land to three brothers, named Williams, who resided in Dallas county, Texas; that the sale was rescinded, possession of the land restored to plaintiff, and the deed returned to them by the Williams brothers, but the latter did not re-convey the land to plaintiff; that defendant knew these facts when he bought, and objected to the title for that reason, but, on being assured by plaintiff and the justice of the peace that such re-delivery of the deed had the effect of vesting the title in plaintiff, he yielded, and made the purchase; but that, in fact, he and plaintiff were mistaken, and the legal title, if plaintiff ever had any, was still in the Williams brothers.

The answer was made a cross-petition; the Williams brothers, the heirs of John Higgins, and plaintiff were made defendants thereto, and defendant prayed that the entire title and interest in the land be divested out of all the defendants and vested in him, and if this could not be done, then he prayed for damages against plaintiff. On exception the answer was stricken out, and defendant declined to plead further.

*Rugely & Huff*, for appellant, cited: Cooper *v.* Singleton, 19 Tex., 266; Price *v.* Blount, 41 Tex., 475. May *v.* Taylor, 27 Tex., 128; Thomas *v.* Beaton, 25 Tex. Sup., 318; Moreland *v.* Atchison, 19 Tex., 308; 2 Kent, 471.

*Jameson & Chambers*, for appellees, cited: Willis *v.* Gay, 48 Tex., 463; Cooper *v.* Singleton, 19 Tex., 266; Price *v.* Blount, 41 Tex., 472.

WILLIE, CHIEF JUSTICE.—It is not directly averred in the pleadings that Langford warranted the title to the land he sold to Haralson, but both parties treat the deed as containing a clause of warranty. Being an executed contract, Haralson could not remain in possession of the land, and successfully defend against a suit for the purchase money without establishing, beyond doubt, that the title was a failure in whole or in part; that there was danger of eviction, and also such circumstances as would, *prima facie*, repel the presumption that at the time of the purchase he knew and intended to [run the risk of the defect. Cooper *v.* Singleton, 19 Tex., 260; Brock *v.* Southwick, 10 Tex., 65; Johnson *v.* Long. 27 Tex., 21.

So far as the previous sale of the land by Langford to W. F. and W. W. Williams is concerned, the allegations of the answer show conclusively that whatever title had been vested in the latter by the deed from Langford was afterwards re-invested in Langford by means of the agreement between the parties to rescind the sale. Although the property was not re-conveyed by deed, yet proof of the facts set forth in the answer as to a recission of the sale would have defeated a suit by the Williamses for its recovery. Moreover, the answer shows that at the time the appellant bought the land he was well aware of the transaction between Langford and the Williamses, and took advice as to its effect upon the title, and acted upon that advice, and not solely upon the representation of his vendor.

Haralson does not allege that the appellee represented that his deed from the Higgins' heirs had been acknowledged by them all. His allegation is that the appellee represented that he had a good title, and this he might have had, though all the grantees in that deed had not acknowledged it, or no witness had proved its execution. It is not expressly averred that Mrs. Aldridge had not acknowledged it, and, if it had been so averred, the defect was in the line of the written title for which Haralson was bargaining, and he was chargeable with notice of it, there being no allegation that it was concealed from him by his vendor. Woodward *v.* Rogers, 20 Tex., 176. To entitle a purchaser in possession under warranty deed to defend against a suit for the purchase money, he must allege and prove that the vice in the title upon which he relies was one of which he had no notice. Price *v.* Blount, 41, Tex., 472.

Besides, he takes the burden of showing that the title is a failure.

This is not conclusively shown by proving that in the line of that title there is a deeed from a married woman which has not attached to it a certificate of her privy examination.    There are circumstances which would prevent a married woman from setting up her coverture in avoidance of such a deed, and the existence of these should be negatived in order to show a complete failure of the title. Tooke v. Bonds, 29 Tex., 20; Demaret v. Bennett, Id., 268.

The answer does not allege positively that a title to a portion of the land still existed in the idiot sister of the two heirs of Higgins, who conveyed to Langford, but merely that the appellant had heard that there was such an heir since he had purchased the land.   His information may not have been correct.   The right of the vendor to his purchase money cannot be defeated or delayed by a mere rumor as to defects in the title which have reached the ears of the vendee.   Danger of eviction does not exist when there is no certainty that the title has wholly or partly failed.   Besides, this heir being an idiot, her deed would not have passed her interest or strengthened Haralson's title.   It could have been divested only by an order of the proper court and a deed from the guardian in charge of the idiot's estate. It is not alleged that such an order was not made and such a deed executed.   The decisions of this court are to the effect that the vendee, in possession under an executed contract, must, in case of an alleged outstanding title, show that it has not passed to his vendor.   It is not sufficient to show that at one time it existed in a third party.   See authorities cited above.

But if the law was with the appellant on all these questions, his plea is still defective in a respect which is fatal to it   It does not set forth the value of the improvements, nor of the rents and profits, and ask an adjustment of the equities between the plaintiff and defendant.   It is an equitable defence, if anything, and yet it makes no offer to do such equity as the plaintiff is entitled to demand under the circumstances.   See Cooper v. Singleton, supra.

We think the court did not err in sustaining exceptions to the plea, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered April 20, 1886.]