### Mrs. Julia DeSteaguer v. A. B. Pittman et al.

Decided March 4, 1909.

**1.—Vendor and Vendee—Defect in Title.**

The defect in the title to land which will warrant a vendee in offsetting against the purchase money the amount paid to extinguish it, must be such as will amount to a breach of the covenant of warranty upon which the sale of the land was made. A mere cloud upon the title or claim not capable of enforcement against the vendee would not constitute such defect.

**2.—Vendor and Vendee—Rescission—Estoppel.**

Where the vendor and vendee, on failure of the latter to complete the purchase of the land, destroyed by agreement the deed and notes, and the vendee agreed that another might purchase from the vendor by paying the balance of purchase money due under the former sale, such transaction, if not a legal rescission of the first contract, estopped the vendee from asserting claim to the land against the subsequent purchaser.

**3.—Landlord and Tenant—Estoppel.**

The tenant under a vendee of land could not dispute his landlord's title, and a payment to him by the landlord in extinguishing the claim which he was estopped from making could not be asserted by the landlord as an offset against his vendor's suit for purchase money, as being made under the necessity of protecting his title and obtaining possession.

**4.—Vendor and Vendee—Outstanding Title—Offset.**

The vendee cannot offset against the purchase money the ·cost of extinguishing an outstanding title of which he knew at the time of the purchase.

Appeal from the District Court of Panola County. Tried below before Hon. W. C. Buford.

*W. R. Anderson,* for appellant.

*H. W. Nelson,* for appellees.—In a suit upon a note given for land, where the vendee has purchased a paramount outstanding title, he will be allowed the costs and expenses of his purchase of such outstanding title, as the same enures to the benefit of the vendor. Denson v. Love, 58 Texas, 468; McClelland v. Moore, 48 Texas, 360; Oury v. Saunders, 77 Texas, 281; Williams v. Finley, 99 Texas, 471.

HODGES, Associate Justice.—Appellant owned a tract of land in Panola County which was sold to Pittman, the appellee, in March, 1902, the consideration being $100 cash and five notes for $89.50 each, due annually thereafter, the last of which matured November 1, 1905. Upon a failure to pay the last mentioned note this suit was instituted, asking for judgment for principal and interest and a foreclosure of the vendor's lien which had been retained to secure payment. Pittman admitted the execution of the note and the existence of the lien, but pleaded an offset amounting to $60, which he claims to have paid to cure a defect in his title and in order to obtain possession of the tract of land purchased. Judgment was rendered against him for the amount of the note and interest less the offset claimed, and the appellant has appealed.

The defense relies upon that principle of law which permits the vendee to offset against the purchase money whatever sum he pays for the perfection or protection of the title he obtained from the vendor, as enunciated in the cases of Denson v. Love, 58 Texas, 468, and Oury v. Saunders, 77 Texas, 281, 13 S. W., 1032. The defect in the title, for the curing of which the expenditure is made and reimbursement claimed, must be such as would amount to a breach of the covenant of warranty upon which the sale of the land was made. A mere cloud upon the title, or a colorable claim, when not accompanied by a substantial legal or equitable right to the land, capable of enforcement against the vendee, would not furnish such a defect in the title conveyed as to authorize the vendee to offset against the demand for the purchase money any sum he may have paid in quieting his title or preserving his peace.

The record shows that some years prior to the time Pittman bought the land it had been sold by the appellant's husband to one Walter Rodgers, who made a cash payment of about $50 and gave notes for the remainder of the purchase money. Rodgers died without having paid more on the land, leaving a widow surviving him. The circumstances under which Pittman bought the land appear to be somewhat as follows: Bryan, an agent of the appellant, made a visit to see Mrs. Rodgers about the place after the death of her husband. Pittman had a mill on the land; he saw the agent upon this occasion and proposed to "take up the Walter Rodgers trade, as it stood, pay the land out and get possession of it by agreeing with the widow, and without any further process." This was agreed to by the agent. Pittman testifies: "I told Katy (meaning Mrs. Rodgers) I would stand in Walter's stead, if she would not object, and she agreed for me to do so. I do not know of my own knowledge what amount Walter Rodgers paid on the place, and only know from hearsay what amount he was to pay for the place, and I know he lived on the

place about five years. . . . I did tell Mr. Bryan that I had talked the matter over with Katy Rodgers and had come to an understanding, and that we understood each other. She agreed with me to let me take up the trade that Walter Rodgers had without any new terms and price with Mr. Bryan, and back interest on the Walter Rodgers purchase, also back taxes which I paid. When I executed my notes for this land I did not know at that time what rights Katy Rodgers claimed to the land. I did know at that time that her husband had bought the land, and I did know when I bought the land that Katy Rodgers was in possession of the land because she was living on the land. I did rent land to her (second) husband, Mr. Gary, while she was living on the land with him."

The record also shows that some time after the death of Rodgers, and probably after the land was sold to Pittman (although it is not clear as to that), Judge Boren, as the agent of the appellant, called on Mrs. Rodgers for the purpose of settling whatever claim she had to the land. The deed from DeSteaguer to Rodgers never having been put on record, both it and the note which had been given by Rodgers were destroyed, the parties thinking this would have the effect of extinguishing whatever right Mrs. Rodgers might have to the land as against the appellant. As to his purpose in paying the $60 claimed as an offset, and the conditions under which it was done, Pittman thus testifies: "About the time the last note became due, or just before it became due, Mr. Gary, who had married Rodgers' widow, came to me in August, I believe, to get some lumber to build a mill, or to repair a mill, and I told him I would want the place in the fall to go to work on, and asked him if he intended to move, and he said he did not aim to move off. . . . He said he would not move because I had no title to the place." Then follow statements concerning a visit to an attorney for consultation and a request to Mr. Bryan to have the matter adjusted before he (Pittman) paid the last note, after which the witness continues: "The claim that Mrs. Rodgers had to the land was that Walter Rodgers had paid the $50, and I don't know whether Walter Rodgers had any deed or not. . . . They did move from there (the place) in February after the note that fell due in November, and I gave them one and a half bales of lint cotton, and the cotton was worth $40 per bale, or I gave them $60 to get them to move off and they gave me a quitclaim deed. Mrs. Rodgers was living on the place at the time I got it and staid there all the time till I bought them off. Mr. Bryan did not offer to adjust the title for me. Judge Boren, after he got the notes for collection, did agree to adjust the title, but failed to do so and I had to do it myself. I never did see the deed from Mrs. DeSteaguer to Walter Rodgers, nor the note."

The question is, did the claim of Mrs. Rodgers, here mentioned by Pittman, amount to an outstanding title which he was compelled to purchase in order to protect himself? The burden of proving that such a title existed rested on Pittman; and unless the evidence upon which he relies is sufficient, *prima facie* at least, to show that fact, he was not entitled to the offset. What character of deed was given to Walter Rodgers by DeSteaguer is not shown; it may have been,

and probably was, a deed reserving a vendor's lien to secure the deferred payments. If so, it vested in Rodgers only an equity in the land, the superior legal title remaining in the vendor. Not having paid the purchase money, Rodgers never acquired more. Without undertaking to say whether the destruction of the Rodgers deed and notes by agreement of the parties had the legal effect of rescinding the contract by which the land was sold to Rodgers, and of extinguishing whatever equity had been acquired by him in the land, it certainly would operate to estop Mrs. Rodgers from thereafter asserting any claim to the land against Pittman, he having purchased with her consent and express agreement. Mrs. Rodgers and her second husband, Gary, were also estopped from asserting any claim against the title of Pittman, because they rented the land from him, thereby becoming his tenants, and thus acknowledging his superior title. They could not at the expiration of their tenancy set up against their landlord the claim to ownership resting upon the former deed to Rodgers. Casey v. Hanrick, 69 Texas, 48, 6 S. W., 405; Juneman v. Franklin, 67 Texas, 411, 3 S. W., 562; Cobb v. Robertson, 99 Texas, 138. The possession of Gary and wife as tenants of Pittman was the possession of Pittman, and he can not now claim that possession was not delivered to him by DeSteaguer. The sum which he may have paid his tenants to get them off the land would not be a valid claim against the demand for the purchase money which he contracted to pay.

There is another fact which we think is apparent from the record and which is sufficient to defeat the offset interposed by Pittman. The evidence is sufficient to show as a matter of law that he had knowledge of the facts upon which Mrs. Rodgers, or her second husband, based the hostile claim to the land. It is a well settled principle of law that the vendee can not offset against the purchase money the cost of extinguishing an outstanding title of which he knew at the time of the purchase. May v. Ivie, 68 Texas, 379, 4 S. W., 641; Fagan v. McWhirter, 71 Texas, 569, 9 S. W., 677; Brock v. Southwick, 10 Texas, 65; Haralson v. Langford, 66 Texas, 113, 18 S. W., 339. Pittman knew that the first husband of Mrs. Rodgers had bought the land and paid some money on it. He evidently knew the terms of the trade between Rodgers and DeSteaguer, because he says he proposed to "take up Rodgers' trade and pay the land out without any further process." He purchased the land with Mrs. Rodgers on it, and permitted her and her second husband to remain there for five years.

We think the record shows a state of facts wholly insufficient to defeat the right of appellant to collect the full sum sued for. However, we do not feel disposed to reverse this case and render judgment, for the reason that the record shows that the pleadings of the appellant as to attorney's fees are not sufficient to authorize a judgment for that sum. Elmore v. Rugely, 48 Texas Civ. App., 456; Young v. State Bank, *ante,* 206. This defect might be cured by an amendment, and proof be made which would justify such a recovery. To remand the case will also give to the appellees an opportunity upon

another trial to meet the objections here sustained to the, proof offered in support of their offset.

The judgment of the District Court will therefore be reversed and the cause remanded.

*Reversed and remanded.*