## RIO GRANDE OIL CO. v. BARKER et al. (No. 1548.)

(Court of Civil Appeals of Texas. El Paso. Jan. 10, 1924.)

**I. Corporations ⬤⇒444—Purchasers of interest in leasehold estate held liable on note notwithstanding absence of corporate seal from conveyance.**

Purchasers of an interest in a leasehold estate who knew that corporation's seal was not affixed to instrument conveying corporation's interest to purchasers at the time of the execution of their note to the corporation in part payment, and who went into possession of the premises and used and enjoyed the premises until dispossessed, not by reason of the invalidity of the conveyance, but by process upon a foreclosure by third persons, could not refuse payment of note on the ground that the instrument was defective because the corporation's seal was not affixed thereto.

**2. Pleading ⬤⇒3—Defendant's oral adoption of answer of codefendant insufficient.**

A defendant granted leave to adopt the answer of codefendant in a suit in the district court cannot adopt such answer orally.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by the Rio Grande Oil Company against R. E. Barker and another. Judgment for defendants, and plaintiff appeals. Reversed, and rendered.

Isaacks & Lattner, of El Paso, for appellant.

Croom, Goldstein & Croom and Denton & McCune, all of El Paso, for appellees.

HIGGINS, J. Appellant, a corporation, brought this suit against R. E. Barker and Lee Glasscock, alleging that on April 20, 1921, plaintiff and defendants owned six-eighths of the oil and mineral production and lease of certain land in Eastland county, describing the same, and on said date plaintiff sold and conveyed the same to defendants, who, in part payment therefor, executed to plaintiff their note in the sum of $2,500, due thirty days ·after date, bearing interest at the rate of 10 per cent. per annum from date and containing the usual attorney's fee clause of 10 per cent.; that the note was unpaid, etc., and judgment was sought for the principal, interest, and attorney's fees, etc.

Defendants answered by general demurrer and general denial. Subsequently Barker filed what he designates his "First Supplemental Answer and Cross-action," wherein he set up a cross-action upon a moneyed demand against the plaintiff, which need not be further noticed as no evidence in support thereof was offered, and it was subsequently dismissed. He further set up that the consideration for the note sued upon had entirely failed for the reason that plaintiff had failed and refused and still fails and refuses to convey the property described in the petition and had failed and .refused and still fails and refuses to affix the corporate seal to the transfer of the property, because of which failure and refusal the title to the property had never passed, and there was, therefore, no consideration for the note. This pleading was sworn to by Barker.

The case was submitted to a jury upon one special issue, as follows:

"Did the instrument from plaintiff to defendant, described by plaintiff in its petition, have the corporate seal of plaintiff affixed thereto at the time of its delivery, or thereafter?"

This was answered in the negative. Whereupon judgment was rendered that the plaintiff take nothing.

### Opinion.

The note upon its face does not disclose the consideration for which it was given, but upon the trial it was shown that it was given in part payment for the appellants' interest in the leasehold estate described in the petition and that a conveyance of some character was executed for such interest. Mr. Denton, attorney and witness for defendants, testified that about the time the deal was made and

the note executed he took the deed to appellant's secretary and requested him to affix the corporate seal, and he refused to do so, and witness had given the deed back to the defendant Glasscock.

Appellant presents the proposition that under the pleadings and uncontradicted evidence it should recover even if the conveyance lacked the corporate seal, because defendants went into possession of the property conveyed, used the same, and had never been dispossessed by the plaintiff or any one holding under it.

The appellees' reply to this in effect is that the conveyance was of an interest in land and the same was ineffective to pass title because of the failure to affix the seal thereto, and therefore the consideration had failed.

[1] It may be assumed that the want of the corporate seal rendered the instrument inoperative as a valid conveyance (Shropshire v. Behrens et al., 77 Tex. 275, 13 S. W. 1043), but this alone was insufficient to defeat the payment of the purchase-money note.

In the first place, the defendants' own evidence discloses that they were aware of the defect in the instrument at or about the time the note was executed. Notwithstanding this knowledge it is shown by the uncontradicted evidence that they went into possession of the premises, used and enjoyed the same until dispossessed, not by reason of the invalidity of appellants' conveyance, but by process upon a foreclosure by third persons.

The evidence upon this phase of the case is as follows:

L. E. Lockhart testified:

"We did accept the note in payment for the property and delivered the property to them. As to whether we executed a deed—well, we executed something there, bill of sale, or whatever you call it. No, sir, I haven't the deed here, the attorneys might. * * * I surely do know whether there was any consideration for the note or not. I sold the property to them, made the deal and everything. As to my knowing whether it was delivered or not, I know this: They took the lease and operated it until the First National Bank and the United Producers' Pipe Line foreclosed and took the property away, for failure to pay the money owed them. The title passed from us to Barker and Glasscock, and from them to the other people. * * * I am sure that Mr. Glasscock and Mr. Barker, the defendants, were never disturbed in their possession of this property by the Rio Grande Oil Company."

Cross-examination:

"I am sure they were never disturbed by any other member of the firm. All we were interested in was to get our money out of the lease, and quit spending money on further developments. We wanted to sell it, and they wanted to buy, and we took their note and part cash and sold it to them."

L. H. Lockhart testified:

"I was connected with the Rio Grande Oil Company about April, 1921, and for several months thereafter, and still am. I know about an oil well in Eastland county, where the production of it was owned jointly by the Rio Grande Oil Company, Lee Glasscock, and R. E. Barker. After April 20, 1921, Lee Glasscock and R. E. Barker took possession of those three wells, and operated the lease for several months, produced oil, and ran into the pipe line, and they also used material from the lease, disposed of it in various ways. They dismantled the well known as No. 3, and moved all the property away, shipped it off some other place, I don't know, I wasn't interested and didn't inquire, they pulled the pipe and shipped it away, tanks, pipe line, boiler, etc. The Rio Grande Oil Company absolutely did not interfere with the possession of that property. I was superintendent and on the lease all the time, and in that neighborhood every day. I was attending to the Rio Grande Oil Company's property in that field at the time. Our lease was 3000 feet from theirs, and it was handy for me to pass through their lease every day. We never did get gas from any of this property."

Cross-examination:

"I know they took possession of the property by seeing them, seeing them do it, and talking to the employees. I saw Mr. Barker and Mr. Glasscock at different times on the lease. They were not just on the lease; they were in charge, giving instructions to their employees. I heard them myself. The first time was three or four days after this transaction. I know that at the time I saw them in possession the conveyance had been adjusted they were asking for. I saw them in possession there myself."

The evidence, showing knowledge by appellees of the defective execution of the instrument at or about the time the note was executed, subsequent entry by them into possession and enjoyment for several months of the revenue from the oil production upon the premises, the appropriation to their own use of the property and fixtures upon the premises, and a foreclosure permitted which renders it impossible for them to now surrender the premises to appellant, precludes appellees from resisting payment of the note merely because the conveyance was defective. They have sustained no loss whatever by reason of the defect in the deed. They enjoyed the full fruit of their purchase until they lost their rights and were dispossessed by a foreclosure which is in no wise shown to be connected with the defectively executed deed. The rules of law governing the right of a vendee to resist payment of the purchase money have been announced in numerous decisions by our courts, and it would serve no good purpose to restate same. It is sufficient to say that in our opinion they abundantly support the conclusion reached. Among the many cases see the following: Morrison v. Faulkner (Tex. Civ. App.) 21 S. W. 984; Ogburn v. Whitlow, 80 Tex. 239, 15 S. W. 807; Cooper v. Singleton, 19 Tex. 260, 70 Am. Dec.

333; Smith v. Nolen, 21 Tex. 497; Haralson v. Langford, 66 Tex. 111, 18 S. W. 339.

Not only does the evidence show a lack of merit in the defense of a failure of consideration, but under the authorities the plea itself is fatally defective and subject to general demurrer for want of essential allegations.

[2] There is another reason why the judgment is fatally defective as to Glasscock, namely: The want of any pleading by him setting up a failure of consideration. His answer was simply a general demurrer and denial. It is true, as asserted in the brief of appellees, the record discloses that the court granted him leave "to adopt as his pleadings the first amended answer of the defendant, R. E. Barker," but there is nothing to show that he ever in fact adopted any pleading of Barker. If he did, he must have done so orally, and this was not permissible, the suit being in the district court. There is no evidence which would authorize a judgment in Glasscock's favor under his general denial.

The evidence appears to have been fully developed. The judgment will therefore be reversed and rendered in appellants' favor as prayed for in its petition.

This disposition of the case renders it unnecessary to pass upon other questions presented in the briefs.

Reversed and rendered.