BROWNE v. GORMAN et al.　(No. 2036.)*

(Court of Civil Appeals of Texas. Texarkana. Dec. 24, 1918. On Appellant's Motion for Rehearing, Jan. 16, 1919.)

1. REFORMATION OF INSTRUMENTS ☞8 — DEEDS—GIFT—DESCRIPTION.

Where a deed of gift from father to sons described certain lands not owned by the father, one purchasing from the sons cannot have the deed reformed to describe adjoining land then owned by the vendor as being the land intended; since the sons, having paid no consideration, have no standing in equity to reform the deed.

2. REFORMATION OF INSTRUMENTS ☞44— DEEDS—PAROL EVIDENCE.

Parol evidence is not admissible to reform a deed describing by field notes land that did not belong to grantor, to make it describe adjoining land then owned by grantor but which the deed in no way describes.

3. DEEDS ☞93—DESCRIPTION—EFFECT.

Nothing passes by deed except what is described in it, whatever the intention of the parties may have been.

On Appellant's Motion for Rehearing.

4. PUBLIC LANDS ☞176(2)—SCRIP—OWNERSHIP OF LAND—INTEREST.

Where vendor held scrip from the state which called for survey of a quantity of land, one-half to holder and the other to the state, and survey was made and the land partitioned by the General Land Office, held, that vendor owned only the part designated as his, and not an undivided half interest in the whole.

Appeal from District Court, Morris County; J. A. Ward, Judge.

Action by James J. Gorman and others against Clayton D. Browne. Judgment for plaintiffs decreeing a partition of land and defendant appeals. Affirmed.

Land scrip No. 428 issued by the commissioner of claims March 30, 1860, authorized the Buffalo Bayou, Brazos & Colorado Railroad Company, or its assignee, to have 1,280 acres of the vacant and unappropriated public domain surveyed in two adjoining tracts of 640 acres each—one for the use of the owner of the scrip, and the other for the use of the state. It was the duty of the owner of the scrip to have field notes and a map of the two tracts surveyed sent to the General Land Office; and it was the duty of the commissioner of that office to number the two tracts, giving to one of them an even and to the other an odd number. The tract given the even number was to be reserved to the state, while the one given the odd number was to become the property of the owner of the scrip. October 24, 1860, James Gorman, then the owner of the scrip, had a survey of 640 acres made by virtue of it in Morris, then a part of Titus county, and October 25, 1860, had another survey of 640 acres made adjoining the other one. Thereafterwards field notes and a map of the two surveys were sent to the General Land Office. It seems that one of the surveys was originally numbered "219," but the number was changed to "426," then to "248," and then back to "426." The other survey was originally numbered "427," but the number was changed to "425." The effect of the numbering finally made of the surveys was to reserve the survey originally numbered "219," but finally "426," to the state, and fix in said Gorman the ownership of the survey originally numbered "427," but finally "425." By an instrument dated November 23, 1867, said Gorman, "in consideration," it was recited, "of the natural love and affection" he had for his sons Charles L. Gorman and Jeremiah W. Gorman, "gave, donated, released and transferred" to them six tracts of land, among them being one known as the Vardeman survey, and another one described in said instrument as:

"Situated in Titus county in said state (not patented) on Sulphur fork of Red river, located October 24 and 25, 1860, by virtue of land scrip No. 428 issued to the Buffalo Bayou, Brazos & Colorado Railroad Company for 640 acres, on the 30th day of March, 1860, by W. J. Hotchkiss, commissioner of claims for the state of Texas, beginning at B. S. Greenham's N. W. corner on the south bank of said Sulphur fork about 20 miles N. 40° E. of Mt. Pleasant; thence S. 140 varas," etc., "being the field notes in full of the survey above referred to as having been finally numbered '426' and reserved to the state."

By the terms of the conveyance the title to the several tracts of land was to vest in the grantees immediately upon the death of James Gorman, he reserving to himself a right to "hold, occupy, use and enjoy" same during his natural life, free of "any cost, charge or hindrance from or by reason of this gift or assignment." The title was to vest in said grantees, "with the exception, to wit, to my wife, Martha T. Gorman," quoting from the instrument:

"In lieu of the homestead which she and I at present occupy I hereby transfer to her, her heirs and assigns forever, 100 acres of land to be taken off of the north end of the Vardeman survey hereinbefore described and designated in the foregoing description as third in the order from the beginning, and as a further consideration for said homestead which we now occupy as aforesaid I now give to her said Martha T. Gorman my horse and buggy valued at $500, and agree and hereby bind the said Charles L. and Jeremiah W. and their legal representatives to give her said Martha T. the further sum of

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

208 S.W.—25　　*Writ of error denied by Supreme Court March 19, 1919.

$500 out of my estate after my death as soon as she (said Martha T.) shall yield up and give possession of the homestead now occupied by myself and my said wife and take possession of the aforesaid 100 acres of land in the aforesaid Vardeman survey."

James Gorman's wife, said Martha T. Gorman, joined him in the instrument; and in consideration, it was recited, of the love and affection she had for said Charles L. and Jeremiah W. Gorman of the 100 acres of the Vardeman survey, she was to have, the horse and buggy her husband was to give her, the $500 to be paid to her out of her husband's estate at his death, and one dollar paid to her by H. P. Mabry as trustee, conveyed to said Mabry as trustee all her right to and claim on the homestead then occupied by her and her husband.

The other one (which includes the land in controversy here) of the two surveys made by virtue of said scrip, to wit, the one finally numbered "425," was patented to said James Gorman as assignee July 19, 1892.

James Gorman and his wife, Martha T. Gorman, died intestate, leaving as their only heirs at law their said sons Charles L. Gorman and Jeremiah W. Gorman, their son James Gorman, Jr., and their daughter Mrs. J. G. McCoy.

By a deed dated November 8, 1903, Charles L. Gorman and J. W. Gorman undertook to convey an undivided one-half interest in and to 590 acres of said survey No. 425, patented as stated to James Gorman, to one Chas. G. Nunn, and by a deed dated September 5, 1904, said Charles L. Gorman and J. W. Gorman undertook to convey the other undivided one-half interest therein to T. Wheat. By a deed dated September 7, 1904, Charles G. Nunn undertook to convey an undivided one-half interest in the land to said T. Wheat, thus passing to said Wheat the title, if any, in Charles L. and J. W. Gorman to the entire 590 acres of said survey No. 425.

As tried this was a suit by the heirs of James Gorman, Jr., and the heirs of Mrs. J. G. McCoy, and John M. Henderson and C. F. Bolin, to whom said heirs had undertaken to convey an interest in the land, against appellant, who had acquired the title of T. Wheat, to partition the 590 acres of said survey No. 425.

The plaintiffs in the court below, who are appellees here, claimed that they owned an undivided one-half of the land and that the defendant Browne, appellant here, owned the other undivided one-half thereof. Appellant Browne claimed that he owned the whole of the 590 acres. The trial court overruled his contention and sustained the contention of appellees, decreeing a partition of the land as prayed for by appellees. Thereupon appellant Browne prosecuted this appeal.

Read, Lowrance & Bates, of Dallas, for appellant.

Henderson & Bolin, of Daingerfield, for appellees.

WILLSON, C. J. (after stating the facts as above). [1, 2] If James Gorman intended by the deed executed by him and his wife November 23, 1867, to convey survey No. 425 to Charles L. and Jeremiah W. Gorman, but, by mistake, instead of describing that survey, described survey No. 426, said Charles L. and Jeremiah W. Gorman, and appellant as their vendee, doubtless would have been entitled, as against appellees, to have the instrument so reformed as to describe said survey No. 425 but for the fact that the deed (at least so far as it was of land surveyed by virtue of scrip 428) was a voluntary one. 34 Cyc. pp. 928, 929, 951, 955, and authorities there cited. "A grantee under a voluntary deed," it is said on page 951 of the work cited, "never has standing to reform in a court of equity, for, never having paid a consideration, he is deprived of nothing if a mistake does exist." As, therefore, appellant was not entitled to have the deed reformed, the judgment is not erroneous unless the deed nevertheless operated to pass the title to the land in controversy to Charles L. Gorman and Jeremiah W. Gorman. That it did not so operate is plain, we think. Contending to the contrary, appellant asserts that the description by field notes in the deed is a false description which, for that reason, should be rejected and not treated as a part of the description of the land. If, appellant says, the field notes should be rejected, the description remaining would sufficiently identify the land conveyed as the land in controversy. Assuming that it would, a sufficient reason for overruling the contention, nevertheless, lies in the fact that it does not appear from the record that the description by field notes was false. There is no repugnancy whatever between the part of the description in the deed which appellant thinks should be given effect and the part which he thinks should be rejected. There is no uncertainty whatever, when all parts of the description are considered, as to the land it applies to. On the contrary, the description in its entirety is a full and consistent one of survey No. 426. Indeed, the contention that the description by field notes is false is not predicated upon language in the deed or uncertainty for any reason as to the land the description applies to, but on the fact alone, it seems, that James Gorman did not own survey No. 426, which the field notes describe, and did own survey No. 425, adjoining it, made by virtue of the same scrip. The argument is that James Gorman therefore should be held to have intended to convey survey No. 425, and that effect should be given to his intention by rejecting the part of the description applicable alone to survey No. 426. It is plain, we think, that the rule (13 Cyc. 630; R. C. L. 1085) which appellant seeks to invoke has no

application to such facts (Minor v. Powers, 24 S. W. 710; Davis v. George, 104 Tex. 106, 134 S. W. 326; Gorham v. Settegast, 44 Tex. Civ. App. 254, 98 S. W. 665; McFaddin v. Johnson, 180 S. W. 306).

"When the question is, what land did the deed convey," said the court in the Davis-George Case, the answer must be looked for in the deed itself, "since no land was conveyed except by it, and it conveys no land except that which by its terms it undertook to convey. Parol evidence, whether brought by parties or strangers, cannot make it convey land which it does not purport to convey nor prevent it from conveying that which it does clearly purport to convey. * * * If it were admitted that Grimmell intended to convey the lower 10 acres as contended by appellees, that intention could not effect such conveyance nor prevent the deed, unless corrected in some proper way, from standing as the legal conveyance of the land described in it. A contrary decision would virtually repeal the statutes regulating the conveyance of lands."

[3] And in the Gorham-Settegast Case the court said:

"It is well-settled law that nothing passes by a deed except what is described in it, whatever the intention of the parties may have been."

Other grounds, now to be specified, upon which, appellant insists, he is entitled to have the judgment reversed, are not, we think, more meritorious than the one we have determined to be insufficient. First, it is asserted that James Gorman was an owner in common with the state of 1,280 acres surveyed by virtue of scrip No. 428 until same was partitioned between them. The partition, it is asserted, was effected when the Commissioner of the General Land Office finally numbered the two surveys constituting the 1,280 acres. On the assumption that the deed from James Gorman to Charles L. and Jeremiah W. Gorman was made before the partition was accomplished, it is argued that if James Gorman, because one owner in common cannot convey a particular part of the common property, failed to pass title to survey No. 426 to his grantees, his deed became effective as a conveyance of his undivided interest in the land, and that his grantees took title to the part allotted to him in the partition, to wit, survey No. 425. There is a conclusive reason why the insistence should not be sustained, to wit James Gorman and the state could not have been owners in common of the land. 23 Cyc. 484. Second, it is insisted that, if the deed made by James Gorman did not operate as a conveyance of survey No. 425, it did operate as a transfer of scrip No. 428 by virtue of which said survey No. 425 was made. Therefore, it is argued, appellant, because the owner of the scrip, was the owner of said survey No. 425. As supporting his contention, appellant cites a number of cases holding that an effect of locating a land certificate is to merge it into the land located, so that the vendee of the land becomes the owner of the certificate, and hence, if the location for a sufficient reason is abandoned and the certificate is floated and relocated on other land, is the owner of the new location. If the cases cited could be treated as applicable in any event to the donee in a deed of gift, it is obvious, we think, that they nevertheless are not applicable here.

The judgment is affirmed.

### On Appellant's Motion for Rehearing.

[4] Appellant insists, and we agree, that there is no reason why an individual and the state should not own land in common. Therefore appellant further insists, and we agree, that the statement to the contrary in the opinion disposing of the appeal is erroneous. But that the law is otherwise than it was stated to be in the opinion does not, we think, require a disposition to be made of the appeal differing from the one already made of it; for while, it is conceded, land can be so owned, it is plain, we think, that the land in controversy here was not so owned by appellant and the state. 38 Cyc. 3, 4. Appellant did not own a part undivided and the state a part undivided of the respective surveys, but appellant owned all of one of them and the state all of the other.

The motion is overruled.