## LOTT et al. v. DASHIELL et al. (No. 6588.)

(Court of Civil Appeals of Texas. San Antonio. June 28, 1921. Rehearing Denied Oct. 12, 1921.)

**1. Vendor and purchaser ⬤⇒308(7)—Failure of title defense to purchase-money notes.**

Vendee in possession under an executed warranty deed may defeat a vendor's suit upon purchase-money notes, in whole or in part, by showing that there has been a failure or partial failure, of title to the land, that there is a valid existing outstanding title, that there is danger of eviction, and also such facts as would prima facie repel the presumption that at the time of purchase he knew and intended to assume the risk of the defect, especially where vendors are nonresidents of the state.

**2. Reformation of instruments ⬤⇒16 — Deed corrected to effectuate intent of parties.**

Where a deed does not convey the tract intended to be conveyed, parties are entitled to have correction effectuated by judgment; proper parties being before the court, and there being proof establishing mutual mistake.

**3. Pleading ⬤⇒376—Admission of facts by one defendant did not establish them as against other defendants and interveners.**

Admission by one defendant of every fact alleged in petition necessary to establish plaintiff's case did not relieve plaintiff of her onus of establishing facts admitted as against other defendants and interveners.

**4. Vendor and purchaser ⬤⇒308(1)—Threat of eviction not essential to defense of partial failure of title.**

There need be nothing more than an actual claim under an outstanding paramount title, or else danger of eviction by it, to warrant defense of failure of title in an action on vendor's lien notes, and there need not be an actual threat of eviction, and a like rule is applied where, through a mutual mistake in a deed, the legal title stands in the name of a third person, as vendee will not be relegated to mere chance to make title through a suit for reformation.

**5. Judgment ⬤⇒101(2) — Not entered against defaulting party under pleadings and proof.**

One making a sale of land to which he has no title cannot foreclose a vendor's lien for the price and cannot go into court confessing in his pleadings that he conveyed no vestige of title

and at the same time obtain a judgment for the purchase money, notwithstanding default of some of the defendants.

**6. Deeds ☜93—Nothing passes except what is described.**

Nothing passes by a deed except what is described in it, whatever the intention of the parties may be.

**7. Deeds ☜13 — Grants to deceased persons void.**

Generally a deed to a deceased person, "her heirs or assigns," is void for want of a grantee; but, where the intention of the parties is clear and the persons intended by the terms "heirs or assigns" of the grantee are ascertainable beyond a doubt, the fact that the grantee is dead should not defeat such intention.

**8. Estoppel ☜15—Evidence ☜215(1)—Correction deed executed after action commenced admissible to estop grantor and as admission.**

In action involving title to land, a correction deed, even though not passing legal title to heirs or grantee of deceased grantee, would be sufficient to estop grantor and her heirs from claiming title to land intended originally to be conveyed, and also was admissible as an admission upon grantor's part as to a mistake of description in the original deed, even though executed after the institution of the suit.

**9. Reformation of instruments ☜33—Parties to chain of title necessary to correction back to source of error.**

In order to reform deed not conveying property that parties had in mind, it is necessary to correct the title back to the source of the error, and the parties to all deeds in the chain of title are necessary parties to the proceeding.

**10. Trial ☜141 — Uncontroverted facts need not be submitted to jury.**

Where by reason of a record admission of one party, confession of liability by another, and default of another, certain facts were not controverted, court erred in submitting such facts to the jury; there being no issue to be determined by it.

**11. Evidence ☜134—Showing of similar acts to show intent inadmissible where intent is immaterial.**

It is only where the intent prompting an act in issue is material that it is competent to resort to a showing of similar acts as circumstantial proof of the act in issue as a part of a system or scheme.

**12. Vendor and purchaser ☜281(2)—Sheriff's deed held properly admitted in evidence.**

In action to foreclose vendor's lien notes where title to land was involved, *held*, that court properly admitted in evidence a sheriff's deed which formed a link in chain of title under which certain parties claimed.

**13. Adverse possession ☜47—Suit held not to break peaceable possession.**

A suit did not break peaceable possession of land, where it was not prosecuted to final effect and ouster.

**14. Adverse possession ☜47 — Suit did not break peaceable possession as to persons not interested.**

A suit involving real estate did not break peaceable possession thereof as against persons not before the court in the suit, and limitations would continue to run as against their interests.

**15. Vendor and purchaser ☜279—Holder of vendor's lien may protect title of vendees.**

It was the right and duty of one seeking to foreclose vendor's lien notes, where third parties intervened and injected into the suit an action of trespass to try title, to protect the title both for herself and the vendees, and one of the vendees could not by willful default to interveners defeat her recovery.

**16. Adverse possession ☜54—Party may set up adverse possession no matter how remote.**

A party may establish title by adverse possession in his chain of title, however remote from the present time it may have ended.

**17. Adverse possession ☜100(6) — Bond for title sufficient to comply with 10-year statute.**

A bond for title was sufficient memorandum of title to comply with the 10-year statute of limitations, where it obligated the conveyance of the entire title, though recognized claims of interest by heirs of a third person.

Dickson, Special Justice, dissenting in part.

Error from District Court, Bexar County; J. T. Sluder, Judge.

Suit by Jas. Polk against D. D. Harrigan and J. N. Lott, in which Mrs. C. L. Dashiell was substituted as plaintiff and in which Sabino Sandoval and others intervened. From judgment for plaintiffs, J. N. Lott and others bring error. Affirmed in part, and reversed and remanded in part.

Don A. Bliss, and Douglas, Carter & Black, all of San Antonio, for plaintiffs in error.

T. F. Mangum, of San Antonio, for defendants in error.

BALL, Special Chief Justice. This suit was originally instituted by one Jas. Polk against D. D. Harrigan and plaintiff in error J. N. Lott, seeking recovery against them on vendors' lien notes aggregating $4,500, together with foreclosure of lien on a certain 13½-acre tract situated in an outlying part of the city of San Antonio, Tex. Later defendant in error Mrs. C. L. Dashiell was substituted as plaintiff, she having acquired the notes after they were declared due. In her third amended original petition, besides declaring upon her notes, Mrs. Dashiell alleged that the 13½-acre tract described in the warranty deed from B. K. and W. R. Edwards, the original vendors, to the defendants Lott and Harrigan, was not the tract actually purchased by the latter, and

that the error in description arose in this wise: Mrs. M. J. Martin, by deed dated March 2, 1887, conveyed to Isabella Steves a certain 15-acre tract described as commencing at the southeast corner of a tract of land conveyed by Mrs. M. J. Martin to Tarleton & Keller, and after the death of Isabella Steves, intestate, P. O. Steep acquired through guardian's deed and otherwise, the title of her four heirs at law to a 13½-acre tract, a part of the aforesaid 15-acre tract and described as having the same starting point, and W. C. Edwards acquired through Steep and his grantee of a one-half interest, Madge Waring, the same property by the same description, and by will of Edwards, upon his death, title to same passed to B. K. and W. R. Edwards who conveyed by the same description to the defendants Lott and Harrigan; that Mrs. Martin intended to convey to Isabella Steves 15 acres with the same metes and bounds, except that the beginning point was to be at the southeast corner of a tract conveyed by her to C. A. Keller (instead of Tarleton & Keller), and the other grantors named in the succeeding deeds each intended to convey to their several grantees the same 13½ acres, commencing as intended in the Martin deed, and that the error in the description in all of said deeds arose through mutual mistake on the part of the several grantors and grantees; that the defendants Lott and Harrigan took and hold actual possession of the last-described 13½-acre tract, actually intended to be conveyed. And plaintiff made all of these grantors and grantees parties defendant and asked that their several deeds be corrected, and that she have recovry on her notes against Lott and Harrigan, with foreclosure on the 13½-acre tract intended to be conveyed, on the basis of this correction.

Harrigan filed simply a formal answer, and in the course of his testimony in behalf of plaintiff admitted his liability. Lott, for the purpose of obtaining the right to open and close the case, under rule 31 governing district courts (142 S. W. xx), admitted of record that the plaintiff "has a good cause of action as set forth in her petition except in so far as it may be defeated in whole, or in part by the facts of his answer constituting a good defense which may be established." These facts in avoidance specially pleaded by Lott are, briefly stated, as follows: That W. R. and B. K. Edwards, the original vendors of the land involved, represented to Lott, acting for himself and Harrigan, that they had a good and perfect title and would furnish an abstract of title to cover, and that any apparent clouds would be immediately cleared; that it was contemplated by all concerned that the land would be cut up by defendants and sold out as cheap lots, obtaining guaranty of title by

233 S.W.—70

a responsible title guaranty company; that Lott had no knowledge or notice of the actual condition of title and that he relied on the Edwardses, with whom he was intimate; that the deed was given and the defendants proceeded to clear the land, but the Texas Guaranty Title Company refused to guarantee the title upon the advice of their attorneys. As specific defects in title he alleged: First, that there was an outstanding undivided one-half interest to said land in the heirs of the first wife of Mariano Rodriguez, which was now being asserted; second, that there were certain incumbrances and legacy charges; third, that Mrs. Norton has had actual and peaceable possession of about 2½ acres of this tract, claiming the same as her own, for more than 10 years, thereby acquiring title thereto by limitation; fourth, that prior to the time Mrs. Martin conveyed this land to Isabella Steves, under whom the Edwardses deraign title, Mrs. Martin had already conveyed the same land to C. A. Keller. He averred that none of these outstanding titles had been acquired by the Edwardses; that he had asked the Edwardses to clear these defects, which they had failed to do, and that by reason of such defects in title the land could not be sold for more than one-half of the amount of the notes, in which amount he was damaged. Finally, he alleged certain schemes on the part of the Edwardses, Polk, Mrs. Dashiell, and Harrigan in the transfer of the notes to defraud him, and that Harrigan maliciously procured his aunt, Mrs. Dashiell, to buy and enforce the notes, himself being the real owner of same. He asked that the Edwardses be required to clear the title before recovery be allowed on the notes, and in the alternative that the transaction be rescinded in toto, the notes canceled, and the title divested, offering to convey the land back to the Edwardses or their assigns or if the transaction be not rescinded allowance be made on the notes to the extent that their consideration had failed.

Plaintiffs in error other than Lott, namely, Sabino Sandoval et al., intervened in the suit, setting up a separate and distinct cause of action in trespass to try title to the same land, claiming a one-half interest in same as the heirs of Maria de Jesus Carvajal, first wife of Mariano Rodriguez; it being her community interest in same.

Mrs. Dashiell, by supplemental petitions, as against the interveners' claim of title, as well as against Lott's plea of failure of title, pleaded the three, five, and ten years' statutes of limitation, and in defense against the interveners' action alleged that there was an outstanding legal and equitable title not held by interveners, and specifically pleaded tenyear limitation title in M. L. Merrick. She also alleged that Lott waived the defects in

the title and his right to rescission by taking and holding possession of the land.

Prior to trial Mrs. Dashiell dismissed as to all the parties to the deeds as to which she sought reformation except the Edwardses and Lott and Harrigan. The cause was then submitted to the jury upon numerous special issues, and upon the basis of the answers thereto the court rendered judgment correcting only the deed from the Edwardses to Lott and Harrigan (the Edwardses having been served with nonresident notice and defaulted), and in favor of Mrs. Dashiell upon her notes as against both Lott and Harrigan, and for foreclosure of the vendor's lien against the property covered by the corrected description and as intended to be conveyed, and decreeing that the interveners take nothing by their suit as against Mrs. Dashiell, Lott, Harrigan, or the Edwardses.

[1] It is the settled rule in this state that a vendee in possession under an executed warranty deed may defeat his vendor's suit upon the purchase-money notes, in whole or in part, by showing that there has been a failure or partial failure of title to the land, that there is a valid, existing outstanding title, that there is danger of eviction, and also such facts as would prima facie repel the presumption that at the time of purchase he knew and intended to assume the risk of the defect. Cooper v. Singleton, 19 Tex. 260, 70 Am. Dec. 333; Brown v. Montgomery, 89 Tex. 250, 253, 34 S. W. 443; Blewitt v. Greene, 57 Tex. Civ. App. 588, 122 S. W. 914, 916, and cases there cited. There would seem to be a special and stronger reason for this where, as here, vendors, liable on their covenants of warranty, are nonresidents of the state. The defense in such case is really an affirmative showing of equitable considerations entitling the vendee to a rescission, and must accordingly be tested by the strict rule applicable to that doctrine. Clearly plaintiff in error Lott did not discharge his peculiar burden of proof, under this rule, in such manner as to entitle him to a peremptory instruction; and his first assignment is overruled. In order to make ourselves plain in the subsequent discussion, we will even go further and say that, under the jury's findings on some issues and the undisputed testimony on others, Lott failed to establish the defenses pleaded by him so as to defeat plaintiff's right to the judgment rendered.

In our view of the record it is necessary to accept as an absolute fact, from the standpoint of the defendant in error, as well as from Lott's under his record admission, the existence of the mutual mistake in the deed from Mrs. Martin and similarly throughout in subsequent chain of title, because it is so alleged in plaintiff's petition, not in the alternative but absolutely, and

her foreclosure is asked only upon a totally different tract from that described in the Edwards deed in view of the existence of such mistake. Some doubt whether the two deeds, in evidence, executed the same day by Mrs. Martin, one to C. A. Keller and the other to Tarleton & Keller, did not actually cover the same land, seems to have arisen from the testimony of Mrs. Martin, then 85 years old, that she did not recall giving but one deed and that was to Keller for services rendered by the firm of Tarleton & Keller. If they did, it would conform the description in the deeds sought to be reformed to the tract intended. But this seems to have been an afterthought, not presented by the pleadings, and, though her statement is undisputed, it is immaterial in the status of the record.

[2] Under plaintiff's allegations the deeds from Mrs. Martin down passed no title to the property involved, since purporting to convey an entirely different tract. The agreement of the parties must, however, control in determining what land was actually bought and sold; and there can be no question but that with proper parties before the court and proof establishing mutual mistake in the different links in the chain of title as alleged by plaintiff, she would be entitled to have such correction effectuated by judgment. Clark v. Gregory, 87 Tex. 189, 191, 27 S. W. 56; Moore v. Hazlewood, 67 Tex. 624, 4 S. W. 215; Laufer v. Moppins, 44 Tex. Civ. App. 472, 99 S. W. 109; Silliman v. Taylor, 35 Tex. Civ. App. 490, 80 S. W. 651; Metcalfe v. Lowenstein, 35 Tex. Civ. App. 619, 81 S. W. 362. In such event the judgment would pass the title to the land as the deeds would have done had they reflected the true agreement of the parties. The judgment actually rendered in this case, however, fails to cure the want of title affirmatively alleged by plaintiff (and admitted by defendant Lott) by reforming the deeds on back to Mrs. Martin, but instead reforms only the deed of the Edwardses to Lott and Harrigan. The question thus arising on the record is whether, in view of this and of plaintiff's affirmative allegation of an actual want of title in the Edwardses to the tract intended to be conveyed to Lott and Harrigan, the judgment awarding recovery on the notes and foreclosure of lien against Lott and Harrigan is erroneous.

[3] Lott's record admission of plaintiff's cause of action, it should be remarked, has no bearing on this question. Its effect was to operate as an abandonment of his purely defensive pleadings as contradistinguished from those in avoidance, and to admit every fact alleged in the petition which it was necessary for Mrs. Dashiell to establish in the first instance in order to enable her to recover. Smith v. Bank, 74 Tex. 541, 546, 12 S. W. 221. This would admit—as far as

Lott is concerned and no further—the fact of mutual mistake on the part of Mrs. Martin and Isabella Steves in the description in the deed from the former to the latter, as well as the ensuing mutual mistake in the successive deeds (following same description) on down to and including the deed to Lott and Harrigan, all as alleged in plaintiff's petition. It would not relieve plaintiff of her onus of establishing these facts as against the other parties to these various deeds, who were obviously necessary parties to their correction. But since it appears beyond question from the allegations of the petition as to the status of the title that it is essential to plaintiff's right of recovery on her notes with foreclosure of lien that she reform all the deeds from Mrs. Martin on down, there is no basis for the contention that Lott's record admission justifies judgment on the notes and foreclosure of lien against him without such complete reformation and correction of title. His admission goes no further than her allegations, and they defeat themselves, that is, the right of recovery, in the absence of proper parties and proof establishing the alleged and admitted mutual mistake throughout said chain of title as to description and identity of the property.

We have found no case, nor have we been cited to any, that sufficiently resembles this to guide us in the determination of the question as to error resulting from the affirmative showing by plaintiff of a failure of title. Under the principle, though, of the peculiar rule applied in this state in cases of failure of title when set up by defendant, the result would seem to follow necessarily that such judgment is fundamentally erroneous. The situation is simply this: The plaintiff shows that the tract described in plaintiff's notes, and deed reserving vendor's lien securing same, is a totally different tract from the tract sought to be foreclosed upon, and that the title to the latter tract is outstanding in Mrs. Martin; that the Edwardses, vendors, and Lott and Harrigan as vendees, undertook to buy and sell Mrs. Martin's land in mutual ignorance of its ownership; that the Edwardses by their deed conveyed to their vendees no title to this tract whatsoever, and consequently that plaintiff, without reformation of the various deeds, had no lien thereon and would get no title under foreclosure and sale; that no one had any idea at the time that by reason of an incorrect description of the land the Edwardses conveyed one tract when all parties intended that they should convey another; though the jury found that Lott was not ignorant of the real condition of the title when he accepted same, this could only refer to the matters set up by Lott and covered in Terrell, Walthall & Terrell's opinion on the abstract, because the plaintiff specifically alleged this mutual mistake on the part of the grantees of the Edwardses, and the undisputed evidence shows that this mistake was not discovered until long after the suit was filed, and just a few weeks before the trial (Harrigan's testimony, S. F. p. 6). Vendees may assume the risk of defects in title, but common sense repels the idea that they ever knowingly buy from one person a title plainly vested in another, and Lott's ignorance of this fatal mistake in description explains his actions in the premises.

[4] It is true that there is nothing to indicate a threat of eviction by Mrs. Martin, or any one else, but there need be nothing more than an actual claim under an outstanding paramount title, or else danger of eviction by it. Cook v. Johnson, 20 Tex. 209, and cases cited supra. The Edwardses by their deed conveyed no title of any character —not simply an inferior title—but by it merely assigned to their vendees the chance to have the deed to their father, W. C. Edwards, and the prior deeds, reformed against the parties thereto by showing mutual mistake. Mrs. Dashiell by her pleading proclaims these facts, showing that beyond question Lott and Harrigan must surrender the land to Mrs. Martin, or her successors in right, whenever they choose to claim it. Under such circumstances, there would seem to be an ever-present danger of eviction, and the very fact of mutual mistake might explain the nonassertion of any claim.

In the leading case of Tarpley v. Poage, 2 Tex. 139, it was said, through Chief Justice Hemphill:

"The vendee must, by competent and sufficient evidence, establish the existence and validity of the outstanding title [which the plaintiff has herself done in this case]—but when that is done, there is no reason why his remedy should be delayed until disturbed in the enjoyment of the land—and this even when the defendant is in possession."

Where, through mutual mistake in deed, there is a conflict with recognized senior surveys, a like rule is applied and the vendee not required to show ouster. Doyle v. Hord, 67 Tex. 621, 4 S. W. 241; Gass v. Sanger, 30 S. W. 502.

It was said by Chief Justice Willie in Haralson v. Langford, 66 Tex. 111, 114, 18 S. W. 339, 340, that "danger of eviction does not exist when there is no certainty that the title has wholly or partly failed." The converse of this must be equally true; that is, where title has certainly failed (as alleged by plaintiff in this cause and admitted by defendant Lott) there is danger of eviction. How possibly can plaintiff Dashiell contend there is no danger of eviction in the light of her pleading?

The rule laid down in these cases is recognized by Judge Denman in Land Co. v. North, 92 Tex. 72, 45 S. W. 994, where it is remarked

that they proceed upon the principle that a court of equity will not ordinarily lend its aid to compel the vendee to perform his contract by paying over the purchase money when it appears that the vendor conveyed him no title; and it is thus that the court distinguishes such defenses from actions at law for breach of warranty, with respect to the necessity of showing at least a constructive eviction. Even in warranty cases it is generally held that there is a virtual eviction upon delivery of deed where the grantor is without any title (15 C. J. pp. 1287, 1288, section 58, p. 1289). Besides, in an action by a nonresident or insolvent vendor to enforce a lien for purchase money, the purchaser may rely upon a breach of the covenant of warranty in his deed, though there has been no eviction. Little v. Bishop (Ky.) 61 S. W. 464; Walker v. Robinson, 163 Ky. 618, 174 S. W. 503; Ison v. Sanders, 163 Ky. 605, 174 S. W. 506; Elder v. Bank, 43 S. W. 19.

In the instant case the grantors are both nonresidents of the state, the deed conveyed no title to the land intended, and, until the covenants of warranty are made good by proper judgment of reformation, they are unavailable to the vendees (Shaw v. O'Neill, 45 Wash. 98, 88 Pac. 111); and to make this case still stronger all these facts are set up affirmatively by plaintiff.

Of course, such outstanding title might be defeated by Lott and Harrigan by a showing of mutual mistake against all parties back to the source of the fatal error in description. Yet surely the law will not relegate them to this mere chance to make title, which Mrs. Dashiell herself assumed in this case but failed to make good, and permit her to collect the price of such a "chance" against them.

[5] In the case of Laux v. Laux, 19 Tex. Civ. App. 693, 50 S. W. 213, it is held that one making a sale of land (and Mrs. Dashiell is, of course, in no different attitude from the Edwardses, as vendors) to which he has no title cannot foreclose a vendor's lien for the price; and we can conceive of no case in which a vendor may go into court, confessing that he conveyed no vestige of title, and at the same time collect the purchase money from his vendees, and foreclose his lien against a third person's land, the intended subject of his sale. Yet that is exactly what has been here done, and we see no escape from the conclusion that the judgment in this respect is fundamentally erroneous, and must therefore be reversed as to both Lott and Harrigan, notwithstanding the latter's virtual default.

To be sure, any error in this matter would be vitiated by an affirmative showing of title in the Edwardses, either by limitation or else by virtue of the correction deed; but as a matter of fact the record contradicts any such title in them.

[6] Though the possession of Mrs. Norton, who took care of the property for Isabella Steves, perfected limitation title in Isabella Steves, still such limitation title did not pass from her heirs to their assigns under deeds erroneously describing the land so held; for nothing passes by a deed except what is described in it, whatever the intention of the parties may have been. Gorham v. Settegast, 44 Tex. Civ. App. 254, 98 S. W. 665, 669; Browne v. Gorman, 208 S. W. 385. Of course, a perfected limitation title is a full legal title, which in the instant case the jury found to be in Isabella Steves, and it would require deed from her or her heirs to pass such title. Campbell v. Castle, 204 S. W. 484, 485.

[7] As for the correction deed executed by Mrs. Martin in March, 1920, to her daughter, Isabella Steves, "her heirs or assigns," 13 years after the grantee's death, the general rule is that such deeds are void for want of a grantee. Wm. Cameron & Co. v. Trueheart, 165 S. W. 58, 61; Vineyard v. Heard, 167 S. W. 22, 25, 26; Nilson v. Hamilton, 53 Utah 594, 174 Pac. 624, 626; Baker v. Lane, 82 Kan. 715, 109 Pac. 182, 28 L. R. A. (N. S.) 405 and note; Devlin on Real Estate, § 187. Cases sustaining deeds made to the "heirs" or the "estate" as such of a dead grantee, who is known by the grantor to be dead, are clearly distinguishable; such unnamed grantees being capable of identification. Hill v. Jackson, 51 S. W. 357; Black v. Brown, 129 Ark. 270, 195 S. W. 673, 674. It may be conceded, however, as a modification of this rule —since its correctness is not necessarily here at issue—that where the intention of the parties is clear, and the persons intended by the term "heirs or assigns" of the grantee are ascertainable beyond a doubt, the fact that the grantee is dead should not defeat such intention. City Bank v. Plank, 141 Wis. 653, 124 N. W. 1000, 135 Am. St. Rep. 62, 18 Ann. Cas. 869.

The only explanation in the record of the circumstances under which this correction deed was given is contained in the testimony of the defendant Harrigan, who says that when Mrs. Dashiell's attorney, shortly before the trial, suggested the error in the description of the land involved herein, he obtained this correction deed from Mrs. Martin. This deed shows upon its face that it is a correction or substitute deed, and since Isabella Steves, the grantee, was Mrs. Martin's daughter, it may be assumed that the grantor knew that the grantee was dead when she made the deed. The intention, it seems, was to carry into effect the purpose of the original deed to Isabella Steves by conveyance to her heirs or assigns. If the technical words used in the deed—"heirs or assigns"—be considered, in accordance with this intention and contrary to the usual rule, as words of purchase, instead of limitation, and even if it be assumed without any showing of any special benefit to the heirs that they consented to

such correction (Bartlett v. Brown, 121 Mo. 353, 25 S. W. 1108), nevertheless this deed could not possibly vest title in the Edwardses, because they were not assigns of Isabella Steves as to the tract of land covered by the correction deed, but were her remote assigns as to a totally different tract. Thus the correction deed is seen to be unavailing as curing the error in the judgment.

[8] With further reference to said correction deed, though possibly not passing legal title to the heirs of Mrs. Steves, it was and would be sufficient to estop Mrs. Martin and her heirs from claiming title to the land intended originally to be conveyed, and also as an admission upon her part as to the mistake of description in her original deed, and therefore admissible in evidence, not being affected by the fact that it was executed after the institution of this suit (Milby v. Hester, 94 S. W. 178, 181), and when supplemented by proof of consent of the Steves heirs to take under this correction deed, would cure that link in the title. Lott's seventeenth assignment of error is therefore not sustained.

[9] Upon another trial, in our opinion, as already indicated, if reformation is still desired, it will be necessary to correct the title back to the source of the error. Mrs. Martin's deed, in effect to the heirs of Isabella Steves, will, under the condition stated, eliminate her, and should also serve to put aside any question as to the right of reformation against her, because of the voluntary character of Mrs. Martin's original deed to her daughter, Isabella Steves. All of the other deeds in the title, however, should be reformed by the judgment, thus passing the title to the proper tract, which in the present attitude of the case has never gotten beyond the Steves heirs. Browne v. Gorman, 208 S. W. 385. Of course, all of the parties to these deeds would be necessary parties to any such proceeding. McNeill v. Cage, 38 Tex. Civ. App. 45, 85 S. W. 57; Alfalfa Lbr. Co. v. Mudgett, 199 S. W. 337, 340; Gates v. Union Co., 92 Miss. 227, 45 South. 979.

It can serve no useful purpose to consider the assignments as to the insufficiency of evidence to support the findings of the jury affecting the plaintiff in error Lott alone. In view of another trial, however, we will briefly consider his objections to jury instructions or issues, and to admission or exclusion of evidence.

[10] The questions submitted in special charge A as to the intention of the Edwardses and Lott and Harrigan as to the property to be covered by their respective deed and notes should not have been submitted to the jury, because there was not, under Lott's record admission, Harrigan's confession of liability, and the Edwardses' default, any issue to be determined by it.

In our opinion the question, "Did the defendants Lott and Harrigan, or either of them, accept the title tendered to them by W. R. & B. K. Edwards?" is not a proper question under the evidence, and it is not likely to become so. Lott could not be bound by what Harrigan may have done in the premises subsequent to their dissolution of partnership, and the evidence is uncontroverted that Lott handled the transaction for both of them prior to such dissolution. Harrigan, having made no issue with reference to failure of title by his general denial, and having virtually waived even this answer by his testimony, special issues as to acceptance of title and like questions, as well as jury instructions on title questions, should not include his name, either conjunctively or disjunctively with Lott's. Patently the attitude of these parties is antagonistic, and Lott should not be held bound by Harrigan's course of action.

[11] Lot's eighteenth assignment complains of the rejection of evidence sought to be elicited from Harrigan on cross-examination, to the effect that in two other matters in which he and Lott were involved Harrigan had procured Mrs. Dashiell as a mere dummy to purchase the notes of Mrs. Jones and of J. M. Wadson and enforce them against Lott. It is contended that this showing as to other similar transactions was admissible as circumstantial evidence that a like course had been followed by Harrigan and Mrs. Dashiell in this instance. If this actually occurred as to the notes involved herein, it would have effected a merger to the extent of one-half of the amount of said notes, and this entirely without reference to any possible malice on the part of Harrigan as dictating his action. We therefore think the court properly excluded this testimony, for it is only where the intent prompting an act in issue is material that it is competent to resort to a showing of similar acts as circumstantial proof of the act in issue as part of a system or scheme. Goree v. Bank, 218 S. W. 620, 623, 624.

[12] We overrule Lott's nineteenth assignment, which complains of the admission in evidence of the sheriff's deed to John W. Smith. It was admissible against both interveners and Lott in rebuttal of their common claim of title in the former. The title derived from Mrs. Martin is claimed to be deraigned under this sheriff's deed.

[13] Lott's twentieth and twenty-first assignments are overruled. The court's instruction that the suit of Rodriguez v. Smith did not break Merrick's peaceable possession is correct. This suit was settled, and not prosecuted to final effect to the ouster of Merrick, and, with reference to the agreed judgment finally entered in that suit, it was well said in the subsequent case involving the same land (Smith v. Lee, 82 Tex. 124, 129, 17 S. W. 598, 600:

"A proper disposition of the Merrick tract, in the absence of pleadings on his part for title and subpartition, was to leave the title as it

stood between him and the representatives of J. W. Smith, and that is what was done by the court. This action of the court inured to the benefit of Merrick to the full extent of whatever right he had against the Smiths."

[14] Besides, the interests of the interveners were not before the court in the Rodriguez suit, and limitation would continue to run as against their interests. Miller v. Gist, 91 Tex. 335, 340, 43 S. W. 263; Cobb v. Robertson, 99 Tex. 138, 147, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609.

[15] The action of trespass to try title injected into this suit by the interveners, Sandoval et al., also plaintiffs in error herein, was opposed alone by the plaintiff below Mrs. Dashiell, who as owner of a vendor's lien on the land held the superior and legal title thereto. It was her right and her duty in this capacity to protect the title both for herself and the vendees, Lott and Harrigan. Lott in defense to her suit on the vendor's lien notes had set up interveners' claim of title, and if Mrs. Dashiell's defense against the interveners would not protect Lott's title, he could by willful default to interveners defeat her recovery on the notes against him.

Even if it be conceded that interveners made a prima facie case as to their claim of a one-half interest in the property as the heirs of Maria de Jesus Carvajal, wife of Mariano Rodriguez when he acquired title from Cavino Valdez in 1809, still the findings of the jury on the various questions as to possession and limitation submitted are conclusive of the fact that these heirs have slept on their rights. In our opinion the evidence both as to Mrs. Norton's possession for Isabella Steves and M. L. Merrick's possession in his own right sustain the findings of the jury on these matters. There is evidence showing that Merrick went into possession of the 500-acre tract, including the land in controversy, in 1851, when his bond for title from Mrs. Lee was made and registered, and further showing that he remained in continuous posession and use of the land until his death in 1874 or 1875. Thus there was ample time for him to acquire title, excluding the period of statutory suspension of limitation from 1861 to 1870, as the jury was instructed to do. There is also evidence showing that Mrs. Norton was in possession of the property in controversy from prior to 1892 on to the time of the purported sale to Lott and Harrigan, and that from about 1892 she claimed and held same under Isabella Steves, until the latter's death about 1908.

In their first five assignments interveners question the propriety of the issues submitted concerning the Steves limitation and the legal sufficiency of the jury's answers as supporting the judgment. In their sixth and seventh assignments they make similar objections concerning the Merrick limitation.

[16] Interveners are correct in the view that both of these limitation titles are merely outstanding titles with which no connection is shown by Mrs. Dashiell; for such limitation titles to the tract of land here involved, whatever the intention of the parties may have been, were never conveyed to the Edwardses. Mrs. Dashiell, however, specially pleaded an outstanding 10-year limitation title in M. L. Merrick, and this as sustained by the jury's finding would in itself defeat interveners' recovery on their title of prior origin, however remote from the present time Merrick's adverse possession may have ended. Burton v. Carroll, 96 Tex. 320, 325, 326, 72 S. W. 581; Branch v. Baker, 70 Tex. 190, 194, 7 S. W. 808.

[17] Merrick's bond for title to the 500-acre tract was sufficient memorandum of title to comply with the 10 years' statute. Wille v. Ellis, 22 Tex. Civ. App. 462, 54 S. W. 922, 925. This bond, though it refers to the land as a part of the estate of John W. Smith, former husband of Mrs. Lee—thus recognizing the interests of the heirs of said Smith (Smith v. Lee, 82 Tex. 124, 130, 17 S. W. 598)—obligated Mrs. Lee to convey the entire title, thereby repudiating the claim or cotenancy of every one else. Miller v. Gist, 91 Tex. 335, 340, 43 S. W. 263; Naylor & Jones v. Foster, 44 Tex. Civ. App. 599, 99 S. W. 114.

We have carefully considered and overrule all of interveners' assignments of error. Since theirs is a severable cause of action, it is not affected by the disposition of the suit as between the other parties hereto. We therefore affirm the judgment of the trial court as against interveners, in which Special Associate Justice DICKSON concurs, and otherwise reverse and remand the cause for new trial, as to which latter disposition Special Associate Justice DICKSON does not concur, and will file dissenting opinion.

DICKSON, Special Justice (dissenting). I concur in the affirmance of this case as to the interveners, F. S. Sandoval et al., but am unable to agree with the majority opinion that the cause should be reversed and remanded as to plaintiff in error Lott, D. D. Harrigan, and W. R. and B. K. Edwards.

To the statement of the case made in the majority opinion it should be added that plaintiff in error Lott also pleaded that he and the defendant Harrigan formed a partnership for the purchase, subdivision, and sale of the land in controversy; that the $4,000 note represented the agreed purchase price of the land, and the $500 note represented cash advanced by the Edwardses to Lott and Harrigan to enable the latter to improve the land; it being understood that both said notes should be secured by a lien retained in the deed.

Before entering into a discussion of the fundamental reasons why I cannot agree with the majority opinion, I shall endeavor to show that the record does not bear out

the contention of plaintiff in error Lott, and that the deed from the Edwardses as originally executed conveyed one tract of land and said deed as reformed by the judgment of the trial court conveys an entirely different and distinct tract of land. The following sketch compiled from data in the statement of facts shows the location of the land involved in this suit:

beginning. As the northwest corner of. the two tracts are identical, manifestly it is impossible to go "east" to the northwest corner of the C. A. Keller tract. If, however, in the Tarleton & Keller deed we reverse the call for the "northwest" corner of the C. A. Keller tract and make it read "northeast" corner of the C. A. Keller tract, then the description in the Tarleton & Keller deed and in the C.

It is true that the original description places the Steves tract immediately east of the "Tarleton and Keller tract," while the reformed description places the Steves tract immediately east of the C. A. Keller tract. However, both the original and the reformed description of the Steves tract are otherwise the same, and a careful examination of the statement of facts leads to the inevitable conclusion that the description contained in the Edwards deed as originally executed describes no land whatsoever or else it describes identically the same land as the reformed description, although the descriptions may be different in verbiage.

The evidence definitely establishes that the Tarleton & Keller tract and the C. A. Keller tract have for their west boundary line identically the same line. The southwest corner of the Tarleton and Keller tract is also the southwest corner of the C. A. Keller tract. The northwest corner of the Tarleton & Keller tract is also the northwest corner of the C. A. Keller tract. The Tarleton & Keller description, after taking us to the northwest corner of the tract intended to be conveyed, calls to go "east" to the northwest corner of the C. A. Keller tract; thence south to a given point; thence west to the place of

A. Keller deed will describe identically the same land. Therefore we are forced to the conclusion that the Tarleton & Keller deed describes no land whatever, or else it describes the C. A. Keller tract as shown on the foregoing sketch. Furthermore, if the Tarleton & Keller deed does not describe any land, then it follows that the Edwards deed as originally executed does not describe any land. On the other land, if the Tarleton & Keller deed and the C. A. Keller deed describe the same land, then it is immaterial whether the Steves tract be described as being immediately east of the Tarleton & Keller tract (as in the deed from the Edwards) or as being immediately east of the C. A. Keller tract (as reformed by the judgment of the trial court). M. J. Martin, who appears to have executed both the Tarleton & Keller deed and the C. A. Keller deed, testified on the trial of the case that she did not convey but one tract. Harrigan, a surveyor, testified that the Tarleton & Keller tract could not be located on the ground because said tract and the C. A. Keller tract had the same line for their west boundary line and that the southwest corner of the two tracts was identical and the northwest corner of the two tracts was identical.

There is ample authority for reversing the call in the Tarleton & Keller deed from the "northwest corner" to the "northeast corner," and it is also well established that parol evidence is admissible to explain a latent ambiguity in a deed and identify the particular tract intended to be conveyed. Coffey v. Hendricks, 66 Tex. 676, 2 S. W. 47; Mansel v. Castles, 93 Tex. 414, 55 S. W. 559; Poitevent v. Scarborough, 103 Tex. 111, 124 S. W. 87.

I am utterly unable to agree with my associates as to the effect which should be given to Lott's admission, which was made under rule No 31 governing the district and county courts. Lott's admission as set forth in the judgment is as follows:

"The defendant J. N. Lott admits that plaintiff has a good cause of action as set forth in her petition, except in so far as it may be defeated in whole or in part by the facts of the answer of J. N. Lott constituting a good defense, which may be established."

What was the plaintiff's cause of action as set forth in her petition? Simply this: That B. K. and W. R. Edwards in May, 1914, executed a general warranty deed to Lott and Harrigan covering 13½ acres of land as described in the petition; that as the purchase price for said land Lott and Harrigan executed to said Edwardses the two notes aggregating $4,500; that a vendor's lien was retained in the deed and acknowledged in the notes to secure the payment of said notes; that said notes and lien were transferred to and were owned by the plaintiff and were past due and unpaid; that through mutual mistake on the part of B. K. and W. R. Edwards and Lott and Harrigan there was an error in the description of the land; that the Edwardses intended to convey, and Lott and Harrigan intended to buy, the 13½-acre tract immediately east of the C. A. Keller tract; "that said last described 13½-acre tract was the tract which Lott and Harrigan actually purchased from said B. K. and W. R. Edwards; that on or about May, 1914, the said defendants, Harrigan and Lott, took actual possession of said last-described 13½-acre tract and held possession of same and are now in possession of same.

Certainly if Lott's admission is to be given any effect whatsoever, it must be held that Lott admitted all of the foregoing facts, for all of said facts are essential to plaintiff's recovery. If, after Lott made said admission, neither party had introduced any evidence, the plaintiff would as a matter of law be entitled to judgment against Lott. Smith v. Bank, 74 Tex. 541, 12 S. W. 221, cited in the majority opinion, holds:

"An admission made in the very language of the rule must be construed to mean that the defendant admits every fact alleged in the petition which it is necessary for the plaintiff to establish in the first instance to enable him to recover." And further the defendant "does not purport to admit the allegations of the petition, but merely to admit that the plaintiff has a prima facie case."

In Sanders v. Bridges, 67 Tex. 93, 2 S. W. 663, it is said:

"The contemplation of the rule is that the admission shall be such that if no evidence be introduced by either party the plaintiff must recover to the extent of the claim made in his pleadings."

In Taylor v. Reynolds, 47 Tex. Civ. App. 344, 105 S. W. 65, it is held:

"Having admitted the appellee's cause of action, and that admission reaching to the entire cause of action, the appellants cannot question the insufficiency of the evidence in proof of the appellee's cause of action."

Again in Berry Bros. v. Fairbanks, 51 Tex. Civ. App. 558, 112 S. W. 427, it is held:

"The contemplation of the rule is that the admission relieves the appellees of proving the case, and to allow them to recover to the extent of the claim made in their pleadings. * * * The admission reaches to the entire cause of action pleaded, and appellants cannot question failure to offer evidence on any material allegation."

In Meade v. Logan, 110 S. W. 188, it is held:

"When the admission contemplated by this rule is filed and entered of record, the plaintiff is thereby relieved from the burden of proving any fact material to his recovery in the action pending. The proceedings are placed in such a status that, if neither party offered any evidence, judgment would be rendered as a matter of law in favor of the plaintiff."

See, also, Workman v. Ray, 180 S. W. 291.

From what has been said, it necessarily follows that the judgment of the trial court should be affirmed as to the defendant Lott, unless he has defeated plaintiff's cause of action in whole or in part by establishing the facts of his answer constituting a good defense. Has Lott under his answer established a good defense to the cause of action he has admitted to be good? It seems very certain to me that he has not.

The contract sued upon was evidenced by the deed from B. K. and W. R. Edwards to Lott and Harrigan and by the notes executed by the latter to the former. The deed and the notes constituted the final written contract into which all previous negotiations and agreements were merged, and these instruments must be held to determine the rights of the parties in the absence of fraud or mistake. Luckenbach v. Thomas, 166 S. W. 99; Manley v. Noblitt, 180 S. W. 1154.

In order for Lott to defeat plaintiff's cause of action it was necessary for him to show three things:

(1) That the title to the land had failed in whole or in part.

(2) That there was danger of eviction, which is shown by establishing definitely that there is a paramount title outstanding in a third person and the land is actually claimed under such paramount title.

(3) Such circumstances as would repel the presumption that at the time of the purchase he knew and intended to run the risk of the defects. Tarpley v. Poage, 2 Tex. 139; Cooper v. Singleton, 19 Tex. 267, 70 Am. Dec. 333; Cook v. Jackson, 20 Tex. 209; Haralson v. Langford, 66 Tex. 111, 18 S. W. 339; May v. Ivie, 68 Tex. 379, 4 S. W. 641; Ogburn v. Whitlow, 80 Tex. 239, 15 S. W. 807.

According to the rule laid down in the cases cited, Lott has failed to establish a good defense. As stated by the majority opinion in the present case:

"Clearly plaintiff in error Lott did not discharge his peculiar burden of proof, under this rule, in such manner as would entitle him to peremptory instruction, and his first assignment is overruled. In order to make ourselves plain in the subsequent discussion, we will even go further and say that under the jury's findings on some issues and the undisputed testimony on others, Lott failed to establish the defense pleaded by him so as to defeat plaintiff's right to the judgment rendered."

In view of the above finding made in the majority opinion, it is unnecessary for me to enter into a detailed discussion of the evidence. However, it may be well to state that for some years prior to the conveyance by the Edwardses to Lott and Harrigan, Lott was engaged in the real estate business in San Antonio, the Edwardses residing outside the state, that all the negotiations leading up to the sale were by correspondence, that Lott was requested by the Edwardses to sell and dispose of said land for them, that Lott interested Harrigan in the land, and Lott and Harrigan formed a partnership for the purpose of purchasing, subdividing, and reselling said land, that before the deed and notes were executed Lott at the expense of the Edwardses obtained an abstract of title, which was examined by the law firm of Terrell, Walthall & Terrell, and said firm under date of March 17, 1914, gave an opinion on the title, which Lott received before the execution of the deed and notes, which opinion is in part as follows:

"We have examined the abstract of title to about 13½ acres of land out of subdivision 2 of the Merrick subdivision of the G. Martinez survey No. 28 in the city of San Antonio, Bexar county, Tex., and find the title good in William R. Edwards and Benjamin K. Edwards, subject to the following objections:

"At your suggestion we have assumed the title to be good in M. J. Martin. In a deed shown, on page 73, from M. J. Martin to Isabella Steves, the description calls to begin at the southeast corner of a tract of land conveyed to Tarleton & Keller. The tract sought to be conveyed is described as being 400 varas by 211 varas. As a matter of fact, on February 23, 1887, M. J. Martin conveyed to C. A. Keller 30 acres directly east of the tract conveyed to Tarleton & Keller, and the deed to Isabella Steves dated March 2, 1887, and the property sought to be conveyed had already been conveyed to C. A. Keller. The same objection applies almost all through the balance of the abstract."

The opinion also states further objections not necessary to quote.

Lott testified that the reason he went on through with the transaction and took the deed from the Edwardses and executed the notes sued on, after this opinion had been rendered by Terrell, Walthall & Terrell, was because witness had sent the opinion to the Edwardses and the other matters had been agreed upon, and he got a letter back from the Edwardses to go ahead with the transaction just as though all papers were fixed up.

Harrigan testified in substance that he knew the location of the C. A. Keller tract on the ground; that he made a plat of it to show the location on the ground of the Steves tract and the Miller tract; that immediately east of the C. A. Keller tract is the Steves tract, the one that witness and Lott bought; that east of the Steves tract is the Miller tract; that witness and Lott bought this Steves tract in the early part of 1914, made a survey of it at that time, and began to clear it; that it was fenced in and is still fenced; that Edwards claimed to own it and that witness and Lott bought from Edwards and had rented it since continually; that witness had surveyed the land at the time they bought it; that witness had been previously employed as a surveyor to survey a tract of land immediately west of it; that this was the C. A. Keller tract; that when witness surveyed the tract he found that the northwest corner of the Tarleton & Keller tract was identical with the northwest corner of the C. A. Keller tract and that the west line of the two tracts was identical and that there was no Tarleton & Keller tract that he could locate; that at the time witness and Lott bought the land they had the opinion setting forth the objections raised by Terrell & Terrell; that Edwards got the releases of the legacies that were required under the opinion, which releases have been offered in evidence, and that they found the Steves release of record, which cured that, and the elimination of the Tarleton & Keller tract cured that; that this was what he and Lott did at the time they bought; that at the time they bought the controversy about the Keller tract had been eliminated, and about that time all other matters had been cleared up; that witness had satisfied himself as to the title of the land before ever having signed the notes back in 1914; that the way witness satisfied himself that the objections were not valid

objections to the title was that they got the releases to the legacies to the Morris Pratt Institute and Katherine Tobey and they secured the release from the Steves heirs; that the Steves release was on record at the time; that Lott told witness the title was good; that Lott and witness went to see Earnest Steves, who was the guardian of the Steves minors, and he said, "Why, these are paid and forgotten long ago," that witness asked him for a release, and he said, "That release is on record or ought to be. I furnished it." That they afterwards found the release; that defendant Lott at the time Lott spoke to witness about going in to buy this land said that he had had the Stewart Title Company examine it and Lott told witness that the title to it was good; that from the time they got a release up to the time of filing of this suit witness never heard Lott make any claim about the title not being good; that before witness and Lott bought the land there was rumored that a Mrs. Norton claimed the land; that Lott told witness that Mrs. Norton claimed all that land out there at one time, kind of an indefinite claim, and witness and Lott went to see her.

From the foregoing it seems to me that it is necessary to conclude that even though it be found that the title is defective, still Lott and Harrigan cannot defeat recovery on the notes, for they held under a general warranty deed, are in undisturbed possession of the land, no danger of eviction is shown, and it was known by them, at the time the deed and notes were executed; that the title was defective.

The opinion of the majority that the judgment of the trial court is fundamentally erroneous is based on the theory that the plaintiff's petition affirmatively alleges facts which defeat her recovery, but with this view I am unable to agree. The plaintiff does not affirmatively allege that the Edwardses had no title to the land, which they sold to Harrigan and Lott. At most, she merely alleges a defect in description such as to make the record title imperfect. She does not allege that the Edwardses did not have a good limitation title. She does not allege that there is a paramount title outstanding in a third person under which the land is claimed, nor does she allege any fact which would show any danger of eviction. She does not allege that Lott and Harrigan were ignorant of the defect and did not intend to run the risk of the same. Before she can be held to have defeated her own recovery, it must appear that she has by her allegations admitted all the facts it was necessary for Lott to establish in order to resist payment of the notes. The plaintiff's petition contains no such allegation.

For the reasons above stated, I cannot agree with the majority opinion that there is fundamental error requiring that this cause should be reversed and remanded as to the plaintiff in error Lott and the defendants D. D. Harrigan and B. K. and W. R. Edwards. I therefore respectively enter my dissent.