Martha Engel POLLARD and O. T. Pollard,
Appellants,

v.

EL PASO NATIONAL BANK, Guardian of
the Estate of Antoinette Cardona, an
incompetent, Appellee.

No. 5445.

Court of Civil Appeals of Texas.

El Paso.

Feb. 15, 1961.

Rehearing Denied March 15, 1961.

**910**

Gerald Weatherly, Laredo, Stanley Caufield, Ft. Worth, for appellants.

Potash, Cameron, Potash & Bernat, Don Studdard, El Paso, for appellee.

FRASER, Justice.

This is a suit by appellee, as Guardian of the Estate of Antoinette Cardona, an incompetent, against Martha Engel Pollard and O. T. Pollard, appellants, to cancel three instruments executed by Antoinette Cardona, a widow, conveying all of her property, real and personal, to Martha Engel Pollard, which instruments were dated March 31, 1959. This suit was brought on the grounds that Mrs. Cardona lacked mental capacity and was unduly influenced in making these conveyances. The matter was tried to a jury on special issues, and the jury found: (1), that Mrs. Cardona "did not have such mental capacity" (as defined by the trial court) when she executed the deed, bill of sale, assignment and transfers; (2), that she was caused to execute them by being subjected to undue influence by appellants; (3), that such acts of appellants were willful; (4–5), that appellee should recover exemplary damages in the sum of $7,500; and (6), that appellants have performed no "services and benefits to Mrs. Cardona and her estate." Whereupon, the trial court rendered judgment canceling the said instruments and awarding exemplary damages against appellants.

Mrs. Cardona lost her husband in June, 1958, and thereafter, on December 23, 1958, was involved in a serious automobile accident with a truck, with the result that she was thrown to the pavement and rendered unconscious. Part of the diagnosis included a fractured skull, edema of the brain, and arterio-sclerosis, with evidence that she was unconscious for several days. Later examination, to-wit, December 31, 1959, revealed that a spinal tap showed the cerebral spinal fluid was grossly bloody. Appellant Martha Engel Pollard is a nurse, who was called from California by Dr. Liddell, Mrs. Cardona's physician, to look after the patient. Mrs. Cardona was taken from the hospital to her home by Mr. and Mrs. Pollard, who moved into her home with her and began looking after her business affairs and apartment rentals. Shortly thereafter, on February 9, 1959, which is actually less than two months after the date of her accident and two weeks after her release from the hospital, Mrs. Cardona went to the State National Bank of El Paso, accompanied by Mrs. Pollard, and there drew out $10,200 from the said bank by means of purchasing cashier's checks payable to Martha E. *Engel.* On this same day, exhibits 7 and 8 show that Martha E. *Engel* deposited $10,000 in her own name with the Mutual Federal Savings and Loan Association of El Paso. Then, on March 16, 1959, Mrs. Cardona—again accompanied by Mrs. Pollard—went to the El Paso National Bank, where she withdrew approximately $8,000 from her savings account, which money, it is alleged, was then deposited in El Paso Federal Savings and Loan Association under the name, "Martha E. Pollard." Then, on March 31, 1959, Mrs. Cardona conveyed her home, apartments, and all personal property and personal effects and clothing, to Martha Engel Pollard who, the record shows, is not related in any way to Mrs. Cardona.

In August, 1959, Mrs. Cardona contacted Mr. Ralph Blair, President of Sherrod Lumber Company, telling him what had happened and stating that she was in fear of her life, and requesting his help. Mr. Blair, on the following day, went to her home, helped her gather her clothes, and leave.

As a result of medical evidence, the court appointed El Paso National Bank as

guardian of the estate of Antoinette Cardona, and said Bank, as such guardian, then became the substitute plaintiff in this cause, to cancel the instruments, as alleged, on the grounds of mental incapacity and undue influence.

A number of witnesses, both lay and professional, were called. Some ten of the witnesses called by appellee stated, in substance, that she was confused, weak and frail; was abnormal and of unsound mind, and talked a great deal about various things, but did not make sense with her conversation. Three witnesses testified that they thought she was insane. Dr. Walker and Dr. Stern, after describing their tests, including an electro-encephalogram, stated that, in their expert opinions, Mrs. Cardona was, as of March 31, 1959, mentally abnormal, child-like, limited in her reasoning, with her insight and judgment impaired; that she had suffered serious mental deterioration, which they said is the loss of ability to think and ability to use ordinary judgment and common sense, and that she was of unsound mind. There were three lay witnesses called by appellants, who testified that Mrs. Cardona was normal, happy, friendly to Mrs. Pollard, and that what she said made sense and that her memory was fine. The attorney who drew the instruments stated that she read them and signed them as her free act and deed. Dr. Liddell testified that he thought she had a normal recovery from her accident.

The above evidence is largely pertinent to the matter of incapacity, with an overtone, of course, of possible undue influence.

One witness testified, as to undue influence, that Mrs. Cardona did just about everything Mrs. Pollard told her to. Two other witnesses claimed to have heard Mrs. Pollard "holler" at Mrs. Cardona, giving her orders in a gruff, rough and loud voice, sometimes with profanity. An employee at the bank testified that she tried to talk to Mrs. Cardona and persuade her to take out only part of her money, but that Mrs. Pollard stepped between them and insisted that all of the money be withdrawn. Other witnesses testified that they were old friends, but were forbidden to visit Mrs. Cardona by Mrs. Pollard, from February 1959 until August 1959. Dr. Stern testified that Mrs. Cardona was susceptible of influence by other people.

While the above résumé is, perhaps, lengthy, we feel that in cases of this nature and importance, an evidentiary picture must be presented when, as here, there is conflict in the testimony which went to the jury.

The appellants have presented some 48 points of error. The first 17 points, called "Group A", charge that the court erred in overruling appellants' two motions for instructed verdict; that the verdict is contrary to the great weight and preponderance of the evidence; that the issues of mental competency and undue influence should not have been submitted to the jury; that there is no evidence to support the finding that Antoinette Cardona lacked mental capacity or was unduly influenced in making the assignments and transfers of property and, again, that there is insufficient evidence to support these findings; and, lastly, that exemplary damages should not have been allowed in the absence of actual damages, and that there was insufficient evidence to support the finding of exemplary damages.

We will attempt to dispose of these matters in as near a logical order as we can. First of all, we find no error in the court's refusal to grant either motion for instructed verdict by the appellants, as there was here present ample testimony of probative force to raise an issue of fact. This evidence has been outlined above. These points are therefore overruled.

 As to those points that the jury verdict is against the great weight and preponderance of the evidence, we again refer to our summation of the evidence which, in our opinion, justifies and supports the finding of the jury and the verdict of the court. This point actually was not raised in the motion for new trial, and is not properly

before this court in any event. Poynor v. Varner, Tex.Civ.App., 266 S.W.2d 462; De-Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95.

Regardless of the above authorities, we have carefully considered the evidence, and find that the findings of the jury were sufficiently supported by the evidence, and that their answers were not wrong or manifestly unjust. Appellate courts are loath to disturb or destroy findings and decisions by juries, and are authorized to do so only if the verdict appears clearly unjust or wrong. King v. King, 150 Tex. 662, 244 S.W.2d 660; Continental Bus System, Inc. v. Biggers, Tex.Civ.App., 322 S.W.2d 1.

Because we do not believe these findings here are unjust, and because we believe them to be sufficiently supported by the evidence, appellants' points relative thereto are accordingly overruled. For further authority on this particular point with reference to conveyances, see: Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849.

■ We also overrule appellants' points relative to the assessment of exemplary damages. The case of Briggs v. Rodriguez, Tex.Civ.App., 236 S.W.2d 510, 515, with the authorities therein cited and set forth, seems to us to be adequate and proper authority for the assessment of exemplary damages in a situation like the one before us. This case holds, among other things, that exemplary damages may be recovered when plaintiff sues for the return of consideration or money paid out because of a wrong done by defendant, and states that the Supreme Court of this State pointed out that "a plaintiff does not waive his right to exemplary damages by suing for the return of the consideration he had parted with because of fraud or *duress*. (Emphasis ours). In Oliver v. Chapman, 15 Tex. 400, Mr. Justice Wheeler pointed out that 'the main object of the suit was to cancel the conveyances which the plaintiff had made and to recover back the property.' Yet it was held that as fraud was shown as the basis for the cancellation, exemplary damages could be re-covered." Other cases are cited and discussed in this decision supporting this theory. Here, we have a finding by the jury that Mrs. Cardona, while mentally unstable, was caused by undue influence to execute certain conveyances and transfers. We believe this state of facts is sufficient to support a finding of exemplary damages. There is an earlier case—Gallagher v. Neilon, Tex.Civ.App., 121 S.W. 564, holding that undue influence is a species of fraud, and of course duress is similar to undue influence. This point is therefore overruled.

■ Appellants also claim error in excluding the reports of Dr. Jones on the ground that they were hearsay and violative of the best evidence rule. These reports were tendered by appellants and their witness, Dr. Liddell. The record shows that appellants made the statement that Dr. Jones was under subpoena and could be expected to appear and testify. We believe there is not merit in this point as, to permit this sort of thing, deprives the adversary of the opportunity of cross examination and violates the rule against hearsay. Phoenix Refining Co. v. Walker, Tex.Civ.App., 108 S.W.2d 323 (wr. dism.); Southwestern Greyhound Lines v. Dickson, Tex.Civ.App., 219 S.W.2d 592.

The above cases also forbid the testimony of one doctor based on the written record of another, where such other doctor did not testify as a witness. Reserve Life Ins. Co. v. Everett, 275 S.W.2d 713.

This point is overruled.

■■ Appellants' next point charges error in the trial court's exclusion of the proffered testimony of attorney Harold Duncan. Mr. Duncan testified that he prepared the instruments and took Mrs. Cardona's acknowledgements on the same. Then, additional testimony was offered as to various conferences Mr. Duncan had with Mrs. Cardona and the Pollards, and his observations or opinions as to Mrs. Cardona's mental competency based on these

conferences. We believe this testimony was privileged and inadmissible, in view of the circumstances here present, and the fact that Mrs. Cardona was the original plaintiff until the bank was substituted in her place. This lawsuit affects Mrs. Cardona's property, and the law forbids any privileged communication to be introduced without her permission. The proferred testimony was that of Mrs. Cardona's one-time attorney, and was adverse and hostile to her interests. Clark v. State, 159 Tex.Cr.R. 187, 261 S.W.2d 339.

There was no attack made on the character or fidelity of the attorney; this excuse, therefore, is precluded. It has also been held that an attorney's opinion as to the mental capacity of a client is not admissible where it is based on privileged transactions and conversations. Gulf Production Co. v. Colquitt, Tex.Civ.App., 25 S.W.2d 989; 44 Tex.Jur. 1066.

Appellee offers further support of the court's action by invoking the provisions of Article 3716, Vernon's Annotated Texas Civil Statutes, known as the "dead man's statute", pointing out that the bank, as guardian, was substituted as plaintiff in this lawsuit by action of the court. This procedure, we believe, brings the matter within the purview of the aforesaid Article. Appellants' points relative to the testimony of Mr. Duncan are therefore overruled.

■ Appellants complain of improper argument by the attorney for appellee. We do not find merit in this point, as the argument complained of referred to the tests alleged to have been made by Dr. Jones, and the statement that, although the attorney stated Dr. Jones would be present, he never did show up, and the attorney's suggestion that perhaps the reason for his non-appearance was that he had not passed on the mental condition of Mrs. Cardona. It is admitted that appellants had Dr. Jones under subpoena and had stated that he was available. We do not believe the comments by the attorney for appellee were irregular or reversible, as appellants, themselves, had

stated that the witness was available, and the remarks made were a proper inference from the evidence. St. Paul Mercury Ins. Co. v. Jackman, Tex.Civ.App., 331 S.W.2d 253; Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302.

Appellee further points out that the objection was not timely made, but was made quietly to the presiding judge without the knowledge of the attorney for appellee, and after the incident happened. We do not believe this argument, under any circumstances, was of such an inflammatory nature as to excuse the aggrieved attorney from timely objection. Wade v. Texas Employers Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197; Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264.

These matters, of course, invoke the discretion of the present and presiding trial judge. This point is overruled.

Appellants next complain of the court's overruling their exception to the pleadings. This point is overruled without comment, as is does not present the matter in proper form but is, rather, a general exception or demurrer. In any event, we do not find error in the court's overruling this objection to the pleadings.

Appellants also complain of the court's action in refusing a continuance due to the absence of one of the attorneys for appellants. This matter has been repeatedly passed on, and appellants do not show grounds for error here.

■ We also overrule appellants' objection to the trial court's definition of "mental capacity". The trial court defined "mental capacity" as follows: "By the term 'mental capacity' is meant the possession of sufficient mind and memory to understand the nature and effect of her act in executing the instruments inquired about and transferring the money inquired about." This definition has been approved and is, in our opinion, adequate. Burleson v. Morse, Tex.Civ.App., 172 S.W.2d 361; Klindworth v. O'Connor, Tex.Civ.App., 240 S.W.2d 470.

■ We find no error in the trial court's admitting evidence of Mrs. Cardona's mental capacity prior and subsequent to the date the instruments were executed. This matter was determined by this court in the case of Niemann v. Zarsky, Tex.Civ. App., 233 S.W.2d 930, and is also discussed in Cole v. Waite, supra.

■ Appellants' Point No. 44 complains that the court should have instructed a verdict for appellants on their cross-action. We overrule this point, as we do not find that the court was ever properly requested to do so and, in any event, this matter was sharply disputed by evidence on both sides, which in itself would have precluded the court from giving the requested instruction.

We have examined all of appellants' points and, so far as we are able, have attempted to dispose of them by opinion. Summing up, our examination of the record does not reveal reversible error. Therefore, appellants' points are all overruled, and the judgment of the trial court is affirmed.