**Byrum HAILE et al.**

v.

**Clyde H. HOLTZCLAW.**

No. 7557.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 31, 1966.

Rehearing Denied March 7, 1966.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellants.

Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, for appellee.

DENTON, Chief Justice.

Appellee, Clyde H. Holtzclaw, as Plaintiff, brought suit against the heirs of the estate of W. B. Haile and Irene Haile. Plaintiff's suit alleges three separate causes of action: suit to set aside a deed and remove cloud from title to a fractional interest in certain lands in Hutchinson County, Texas; an accounting for royalties and rentals allegedly withheld from Plaintiff by the Defendants; and for damages for named Defendants fraudulently procuring said Deed from the Plaintiff. Two special issues pertaining to Plaintiff's mental capacity to execute the deed in question and the exercise of undue influence upon him were submitted to the jury. The trial court withdrew other issues from the jury and entered an order finding such matters in favor of the Plaintiff. The jury found the Plaintiff did not have the mental capacity to execute the deed in question; and that he was not acting under undue influence. No exception was taken to the latter finding and it is not before us in this appeal. Judgment was entered setting aside the deed from Plaintiff to the Defendants;

it declared Plaintiff the owner of an undivided one-ninth (⅑) of the properties of W. B. and Irene Haile under the Will of W. B. Haile; awarded Plaintiff damages as the difference between the amounts paid Plaintiff during the four years next preceding the filing of this case and the amount the Court decreed should have been paid Plaintiff during that period; and denied Defendants' recovery sought by their cross-action which asserted Plaintiff had no interest in the properties in question and thus not entitled to any damages from the Plaintiff. From this judgment, the Defendants, Byrum Haile, Jim Haile, and Nadine Haile Martin, individually and as Trustees of the estate of W. B. Haile, deceased, and Clyde Martin, Verdie Herrington, W. C. Haile, Mary Fry Gray, and Walta Fry Russ prosecute this appeal. Gwyn Haile and Patricia Ann Branum were made party defendants but they have filed disclaimer as to any interest in any undivided one-ninth (⅑) interest in the property and have not appealed from the judgment of the trial court.

Although numerous questions are presented, one of the principal basic questions concerns the construction of the will of W. B. Haile, deceased. Mr. Haile and his wife, Irene, executed separate wills on April 26, 1946. For all practical purposes, they are identical. Paragraphs 5, 7, 8 and 10 are identical except for the substitution of names. The pertinent parts of W. B. Haile's will are as follows:

"FIVE. It is my will and desire if I shall predecease Irene Haile, that I do hereby give, devise, and bequeath unto my beloved wife, Irene Haile, all personal property which I may own at the time of my death including cash on hand and in the bank, together with all other personal property, with the full right to manage and dispose and expend same.

It is further my will that all income from all royalty interests shall be divided into eleven equal parts, and that each of our beloved children named below shall re-

ceive an undivided one-eleventh and that Irene Haile shall receive two-elevenths. That there shall be reserved at all times by the Executor sufficient money to pay all inheritance, income and other taxes of every kind and character."

" * * *

"SEVEN. It is my will and desire and I do hereby direct that if I should predecease Irene Haile she shall have the sole management and control and direction of all of my separate estate as well as her separate estate, and that so long as Irene Haile shall live, the royalty income from said property shall be divided as provided in Paragraph Five, that is the said Irene Haile shall receive two-elevenths and each of our children shall receive one-eleventh of such income, after deduction of an adequate reserve for the payment of taxes. Proper division of said funds shall be made within a reasonable length of time after the royalty is received, not to exceed thirty days, unless all our children below named consent to a further extension, which they may do for the purpose of convenience in distributing said funds. With reference to all other income except royalty income, it is my wish and desire that my beloved wife shall have the full right to expend and dispose of same should she so desire. Whenever the term 'royalty income' is used in this will, it shall be construed to mean all income derived from the production and sale of oil, gas and other minerals, including royalty, overriding royalty, and oil, gas and casinghead gas payments."

"EIGHT. That it is my wish and desire and I hereby direct, after consultation and full understanding with my beloved wife, Irene Haile, that if Irene Haile should predecease me, that our children, including our own child, Byrum Haile, and my children by a former marriage, Verdie Herrington, Chloris Haile, Jim Haile, Betty B. Holtzclaw, Meade Haile and Nadine Haile Martin, and Mrs. Irene Haile's children by a former marriage, namely Mrs. Mary Fry Gray and Mrs. Walta Fry Russ, shall upon my death be the equal owners of all my property both real, personal and mixed, of every kind and character whatsoever and that all income from said property shall be divided equally between all of said named children without reference to community property rights, or to any separate property rights of either of us hereby stating that it is my will and desire that upon my death, that all of my property together with all the property of my beloved wife, Irene Haile, shall be considered as community property without reference to any separate property rights which either of us may claim.

" * * *

"TEN. It is my will and desire, and I hereby direct that the real estate, and any personal property used in connection with said residence, which we own in Roaring Springs, Texas, in Motley County, which is being used at this time by Mary Sampson as a residence, shall be and continue as her residence during her lifetime, and she is hereby given and granted a life estate therein; but at her death (or at my death if she should predecease me) then it is my will and desire, that said property shall be considered a part of the estate, and the Executor or Executors above named shall have the right to sell and dispose of same, at their discretion, and the proceeds to be divided equally among our children, named above, except that if Irene Haile shall be living, the proceeds shall be divided into eleven equal parts, and two-elevenths shall be given to Irene Haile."

W. B. Haile died on November 20, 1948, and left the written will referred to above. Betty B. Holtzclaw, wife of the plaintiff and daughter of W. B. Haile by a previous marriage, died March 31, 1951. She left a written will dated September 15, 1950, in which she named her husband the plaintiff here, the sole legatee and devisee of her estate. She left no children or other descendants. The W. B. Haile will was

offered for probate on January 4, 1949 and Irene Haile duly qualified as Independent Executrix under the will. Acting as Independent Executrix, Irene Haile filed an Inventory and Appraisement listing all the property owned by W. B. Haile and Irene Haile as community property and W. B. Haile's separate property. Until her death on September 18, 1957, Irene Haile distributed 1/11 of the total income from the properties to each of the nine children and retained 2/11 for herself. After Betty B. Holtzclaw's death in 1955, Mrs. Haile began paying Betty Holtzclaw's 1/11 interest in the income directly to the plaintiff herein. Monthly payments in this amount were made to him until April, 1964. After Irene Haile's death, these monthly payments were made to Appellee by the Trustees of the W. B. Haile estate. On May 30, 1963, Appellee executed a deed conveying to the "W. B. Haile estate" as grantee, subject to a life estate in the grantor, the property interest inherited by him from his wife, Betty B. Holtzclaw, under her father's will. It is this deed which Appellee seeks to set aside and have declared null and void. Other facts necessary to the issues will be stated in the discussion of such issues.

■■■ In construing the will, it seems appropriate to refer to several cardinal rules of construction to be followed. It is the court's duty to ascertain and enforce the intention of the testator; and if that intention is not clearly expressed by the particular language used, it may be determined by looking to the provisions of the will as a whole, and to the circumstances surrounding its execution. Guilliams v. Koonsman, 154 Tex. 401, *279 S.W.2d 579, 57 A.L.R.2d 97.* Another equally well established rule of construction is that every presumption is against any intestacy and if the will is open to two constructions, the interpretation will be given it which will prevent intestacy. Ferguson v. Ferguson, 121 Tex. 119, 45 S.W.2d 1096, 79 A.L.R. 1163; Crowley v. Vaughan (Tex.Civ.App.) 347 S.W.2d 12 (Error refused).

■■ As we understand it, the parties hereto seem to agree on certain aspects of the will. It is conceded that any interest Clyde Holtzclaw may have in the estate must come from his wife, Betty B. Holtzclaw, the daughter of W. B. Haile, deceased. It is further correctly conceded that any property interest acquired by Betty Holtzclaw was passed to her only by the will of her father, and that she acquired no interest from the will of Irene Haile. However, Appellants take the position that paragraphs 5 and 7 are the only depositive paragraphs of W. B. Haile's will and that no property interest passed under paragraph 8 of his will because the latter paragraph was contingent upon Irene Haile predeceasing the testator. Since this event did not occur, appellants say paragraph 8 of his will has no effect. However, appellants do not completely ignore paragraph 8 as they recognize it serves the purposes of naming the children of W. B. and Irene Haile referred to in other paragraphs of the respective wills. We think, as will be demonstrated later, that paragraph 8 serves other purposes as well. Appellants argue that no real property, except royalty income, passed to Betty Holtzclaw under her father's will and that this interest was a life estate and terminated at the death of Irene Haile. It therefore follows, they say, that appellee inherited none of the Haile estate from his deceased wife. They further contend a life estate in the mineral interest was followed by a contingent remainder in the appointees of Irene Haile in her will; and that this contingent remainder became vested in the children who survived Irene Haile, who would take under paragraph 8 of her will. In other words, their position is paragraphs 5 and 7 create a life estate in the royalty interest in Betty Holtzclaw and the other children of W. B. and Irene Haile; and that such life estate was limited by the life of Irene Haile and at her death this contingent remainder vested in the surviving children. The basic difference between the positions of the parties is best stated by the two following questions: (1) Was the interest of the chil-

dren a contingent or vested remainder? (2) If vested, when did the remainder become vested in the children? Although appellants say the two wills were not mutual or contractual, the language of paragraph 8 clearly shows the intention of the testators was that all their property would pass under the will of the first to die. This construction would be in conformity with the presumption against intestacy.

■■ The W. B. Haile will is ambiguous in that it does not include a residual clause or a paragraph other than paragraph 8 which granted a fee simple estate. However the wills, as written, clearly reveal a general plan of both testators. In our opinion, the language of paragraph 8 must be considered along with the will as a whole in determining the intent of the testator. As previously stated, paragraph 8 of both wills are identical except for the change of names and relationship of husband and wife. The language, "after consultation and full understanding with my beloved wife (husband), Irene Haile (W. B. Haile)," clearly show the wills were executed in furtherance of an agreement and understanding between the testator and testatrix and were contractual in nature. Wagnon v. Wagnon (Tex.Civ.App.) 16 S. W.2d 366 (Error refused). It has been held that a will may, by its terms conclusively prove or tend to prove that it is based on or executed in furtherance of an agreement. Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1. We conclude the language of the will, together with the fact the wills were executed on the same day and before the same witnesses conclusively, shows the two wills were executed in furtherance of an agreement and were contractual in nature. Upon the death of W. B. Haile and the probate of his will by Irene Haile, together with her accepting under his will, the disposition under his will became binding upon Irene Haile. Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888; Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588.

■ We think the trial court was correct in finding that after the death of W. B. Haile, Irene Haile took under his will. It is undisputed, the estate of W. B. and Irene Haile consisted of both community and separate property. Mr. Haile's will bequeathed his wife all of his personal property with the full right to dispose and expend it. Paragraph 5 devised "all income from all royalty interest" in eleven equal parts. Each of the nine children named were to receive $\frac{1}{11}$ and his wife $\frac{2}{11}$. Paragraph 7 gave Irene Haile "the full management and control and direction of all of my separate estate as well as her separate estate" and that so long as Mrs. Haile should live, the royalty income from "said property" was to be distributed as set out in paragraph 5. Paragraph 7 further bequeathed all income except royalty income to his wife with the full right to expend and dispose of such income. All bequeaths in paragraph 7 are predicated on the limitation, "so long as Irene Haile shall live". Mr. Haile was granting a life estate both in the $\frac{2}{11}$ of the royalty income and all other income to Irene Haile from both his separate estate and Irene's separate estate. She was clearly put to an election whether she would accept under the terms of the W. B. Haile will (a life estate in the income) or take her own interest in the estate. Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Nye v. Bradford (supra). It is undisputed Irene Haile did accept under the will of W. B. Haile. She probated his will and qualified as the executrix and distributed the royalty income to herself and the named children until her death. It is also clear the wife's acceptance under the will of W. B. Haile created an estoppel against her and those claiming under her, to claim any interest in the estate other than the life estate granted to her in her husband's will. Dakan v. Dakan (supra); Chadwick v. Bristow (supra).

■ Another applicable rule of construction of wills is that if there is doubt as to whether a vested or a contingent remainder was intended, the doubt will be re-

solved in favor of a vested remainder. Rust v. Rust (Tex.Civ.App.), 211 S.W.2d 262, affirmed, 147 Tex. 181, 214 S.W.2d 462. Jones v. Hext (Tex.Civ.App.) 67 S.W.2d 441 (Error refused). Paragraph 8 of Mr. Haile's will devised all property to the nine children equally; and declared at his death that all property of his and his wife's "shall be considered as community property without reference to any separate property rights which either of us may claim". Paragraph 10 disposed of property "we own" in Motley County and stated "said property shall be considered a part of the estate". We have reached the conclusion the testators intended that the nine named children's interest vested in fee at the death of W. B. Haile, subject to the life estate in the royalty and other income from the entire estate. As stated in Chadwick v. Bristow (supra): "It is well settled that a remainder is vested where there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate." The nine children were persons in being and the remainder was vested in them at the time of W. B. Haile's death. The vesting of estates at the earliest possible time is favored by the law. Chadwick v. Bristow (supra). Giraud v. Crockett (Tex.Civ.App.) 142 S.W.2d 243 (Error refused). It is therefore our opinion, under the applicable rules of construction, the nine children's interest vested in fee at the death of W. B. Haile, subject to the life estate in the proportional share of the income in Irene Haile. Betty Holtzclaw, having survived her father, became vested with an interest in the whole estate; and her inherited interest was capable of being devised by her to the appellee.

Having determined appellee was the owner of a fractional interest in the Haile estate, we must then determine whether or not the trial court was correct in setting aside the deed executed by the appellee. This is the deed he executed on May 30, 1963, in which he conveyed to the W. B. Haile estate, subject to a life estate in the grantor, all property interest inherited by him from his wife, Betty B. Holtzclaw.

In attacking that portion of the trial court's judgment which set aside this deed, appellants urge error in the following particulars: The admission into evidence of three county court judgments, two committing appellee to a mental hospital and the other ordering a temporary guardianship for him; the contention that there was no evidence and insufficient evidence to support the finding that appellee did not have the requisite mental capacity to execute the deed in question; the assertion that the definition of mental capacity was erroneous; that the trial court erred in finding as a matter of law appellee did not intend to make a gift when he executed the deed; and the deed was not invalid on its face.

Appellee's primary cause of action sought to set aside the conveyance of May 30, 1963, contending he lacked sufficient mental capacity to execute such a conveyance. In support of that issue, appellee introduced into evidence two orders of the County Court of Potter County, dated February 13, 1958, and April 12, 1963, and an order of the County Court of Armstrong County, dated May 15, 1963. Both Potter County Court judgments committed appellee to the Wichita Falls State Hospital pursuant to the Texas Mental Health Code, Article 5547–1 et seq. Vernon's Ann.Tex. Civ.St. Each found appellee was mentally ill and required temporary hospitalization in a mental institution as provided for in Article 5547–31 et seq. V.A.T.S. It is appellant's contention these orders for temporary commitments adjudicate a person as mentally ill as compared to mentally incompetent and such proceeding creates no presumption of legal competency; such proceeding constitutes hearsay, is irrelevant and immaterial and prejudicial. The orders were offered and admitted into evidence as evidence of the appellee's state of mind at the time he executed the deed in question. Relevant evidence pertaining to mental ca-

pacity is not restricted to the time a given act is performed. That issue may be determined upon testimony as to the actor's mental condition either prior to or subsequent to the time the act complained of was performed. Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849.

 Although appellants recognize the distinction between mental incapacity and mental illness, the cases they rely on relate to orders of mental incompetence after the performance of the act in question. Other cases cited discuss the presumption of sanity or insanity. We are not here concerned with the admissability of the commitments to create a presumption of mental incompetence or as an adjudication of appellee's mental condition, but as evidence of his state of mind. Whether or not appellee had sufficient mental capability to execute the deed was a fact issue for the jury. We are of the opinion that the commitment orders were admissible as evidence to be considered by the jury in determining that issue of fact. The Armstrong County order, appointing a temporary guardian of appellee's estate was not void, as contended by appellants, for lack of service or notice upon appellee. The order was issued pursuant to Section 131 et seq., of the Probate Code, V.A.T.S., which provides that a temporary representative may be appointed, "with or without written application and without notice or citation." We think this order is also admissible along with the two commitments as evidence to be considered by the jury. Each proceeding occurred prior to the execution of the deed. In fact, appellee had not been finally released from Wichita Falls Mental Hospital when he executed the deed in question. He was home on leave from the hospital for approximately one week when he executed the deed and was returned to the hospital by one of the appellants on the following day. He was released on the day he returned. The order appointing a temporary guardian was issued fifteen days prior to the date the deed was executed. We find nothing in this record when considered with other evidence of appellee's mental condition, to indicate they were in themselves prejudicial or unduly inflammatory. We hold that these orders were admissable for the purpose offered.

 Appellants next contend that there was no evidence, or in the alternative, there was insufficient evidence to support the jury finding of mental incapacity on the part of appellee at the time he executed the deed. As to the no evidence point, we have only to refer to the County Court's commitment orders and the order appointing a temporary guardian. We believe these documents are evidence of appellee's mental condition and they were sufficient to raise an issue of fact.

 The question of whether or not the evidence is sufficient to support the jury finding requires a review of all the evidence. The County Court judgments are not sufficient in themselves to support the jury findings. Article 5547–83(b), V.A.T.S. reads as follows:

"The judicial determination that a person is mentally ill or the admission or commitment of a person to a mental hospital, without a finding that he is mentally incompetent, does not constitute a determination or adjudication of the mental competency of the person and does not abridge his rights as a citizen or affect his property rights or legal capacity."

This Article specifically limits the affect of such judicial determination. These proceedings, by the very language of the statute, do not effect such persons' property rights or legal capacity. We are concerned with appellee's legal capacity to execute the instrument and that state of mind had to be shown to exist when he executed the deed on May 30, 1963. However, this may be determined upon testimony as to his mental condition either prior to or subsequent to the time the act in question was done. Cole v. Waite (supra). Such testimony must refer to his condition at or near the time of the act which would reasonably

tend to show mental incapacity on his part at that time. Chambers v. Winn (Tex.Com. App.) 137 Tex. 444, 154 S.W.2d 454 (opinion adopted). Hollar v. Jowers (Tex.Civ. App.) 310 S.W.2d 721 (Ref. N.R.E.)

Excluding, for the moment, the commitments and order appointng temporary guardianship, the evidence pertaining to appellee's mental condition at or near the time he executed the deed is, at best, meagre. There was no medical testimony offered and no lay witnesses were called on to express an opinion as to the state of mind of appellee at or near the time in question. Appellee testified he did not remember signing the deed but he remembered many details concerning the scheduled guardianship hearing in Claude, Texas, on Monday before signing the deed on Thursday. On the following day, May 27, Appellee's attorney filed a divorce suit in Armstrong County. Appellee authorized the suit and participated in a property settlement discussion with his attorney and the attorney for his wife. He recalled his trips to and from Wichita Falls during this time and other events occurring during that week. Appellee's wife testified that he was a patient in a private mental hospital in Amarillo for some six or seven weeks in the spring of 1962; that they separated on several occasions after their marriage in June of 1959; and that prior to his confinement in 1962 and 1963 he had been drinking heavily. Appellee left their home in Claude on March 29, 1963, and his wife did not see him again until July of that year. In testifying to the August, 1959 separation, Mrs. Holtzclaw testified: "Well, pressure from somewhere was brought to bear on him and he eventually began to drink and he left". Two months later, she saw him in jail in Dumas. She testified he had been drinking, "and, of course, he was raving and ranting and accused me of * * * calling me everything". They reconciled within several months and she related that in the spring of 1962 Appellee was in the process of purchasing a drugstore in Claude. She testified: "and then, of course, being under

that pressure and strain, why, and eventually that led to drinking again". It was this incident that preceded her placing appellee in the Underwood Hospital in Amarillo. She testified to no other such incidents until he left their home in March, 1963, previously referred to.

■ Appellee remained in Wichita Falls State Hospital from April 15 until May 25, 1963, when he was granted the one week furlough. He was formally released on May 31, 1963. There is no evidence that he drank intoxicating liquor at any time during this seven week period. During the week furlough, appellee stayed in the home of Byrum Haile, one of the appellants. Mr. Haile testified that during this period appellee was in a nervous condition, worrying about his return to Wichita Falls, but that he appeared to be normal and talked rationally. He further testified Holtzclaw did not drink during that week. Mrs. Byrum Haile corroborated her husband's testimony and she further testified that after signing the deed in question, appellee stated: "I am glad that I signed that instrument because that is what Betty would want me to do". Appellee offered no direct testimony concerning his mental incompetency at or near the time that he executed the deed, nor was there any provocative testimony of any peculiar or irrational action on his part at or near the time of the execution of the deed which would reasonably tend to show mental incapacity on his part at that time. We, therefore, conclude the evidence in this record was insufficient to support the jury finding as to appellee's mental incapacity.

■ Although this ruling will require that the trial court's judgment be reversed and remanded, we think, in view of another trial, it advisable to discuss other matters brought forward. Appellant complains of the trial court's definition of "mental capacity" particularly to the inclusion of the word "memory" therein. The trial court gave the following definition of this phrase: "Mental capacity means that at

the time of executing the deed, grantor must have had sufficient mind and memory to understand the nature and effect of his act in executing the deed". Essentially, the identical definition has been approved and is proper under this record. Pollard v. El Paso National Bank (Tex.Civ.App.) 343 S.W.2d 909 (Refused N.R.E.). Klindworth v. O'Connor (Tex.Civ.App.) 240 S.W.2d 470 (Ref. N.R.E.).

■ Upon motion of the appellee, the trial court withdrew certain issues from the jury and made findings on those issues. One such issue was that appellee did not intend to make a gift at the time he executed the deed in question. In order for the trial court's action to be correct, there must be no evidence to the contrary. The only testimony on the matter was the following testimony of appellee himself:

Q. "The question is, to the best of your recollection, did you intend to make a gift of any kind to any of the Defendants or to the W. B. Haile estate?"

A. No."

When this self-serving statement is viewed in the light of other testimony, we believe a fact issue was raised. Appellee testified he did not remember signing the deed and the above answer is predicated on "the best of your recollection". We think appellee's testimony here comes under the general rule rather than an exception to the rule as stated in 24 Tex.Jur.2d, Evidence—Section 714, page 375:

"Ordinarily, the jury is not bound by the uncontradicted testimony of an interested witness. However, under an exception to this general rule, if the uncontradicted testimony of an interested witness is clear, direct, positive, and free of inconsistency, and if there are no circumstances that tend to cast suspicion on it, the witness' testimony must be accepted as true as a matter of law and no issue of fact is created for the jury".

Appellee's statement was based upon a qualified question. In addition, there was testimony that immediately after executing the deed he was quoted as saying: "I am glad that I signed that instrument because that is what Betty would want me to do". We conclude the trial court erred in finding as a matter of law that appellee did not intend to make a gift when he signed the deed.

■ By counter-points, appellee contends the deed in question is void on its face for the reasons: (1) The instrument named no grantee or grantees. (2) The property purportedly conveyed is insuffciently described; and (3) The instrument is acknowledged by Byrum H. Haile, a possible grantee and part owner of the property interest sought to be conveyed. The grantee named in the deed is "The W. B. Haile Estate". The grantee named is sufficient to sustain the validity of the deed. The heirs and devisees of the W. B. Haile estate are capable of ascertainment, thus it is sufficient. The fact one of the questions in this case is whether or not Betty Holtzclaw received a vested fee interest in the death of W. B. Haile does not preclude the conclusion that such named grantee is sufficient for they could be identified by the description given. McKee v. Ellis (Tex.Civ.App.) 83 S.W. 880; Lott v. Dashiell (Tex.Civ. App.) 233 S.W. 1103. Modified on other grounds in Dashiell v. Lott (Tex.Com.App.) 243 S.W. 1072; Vineyard v. Heard (Tex. Civ.App.) 167 S.W. 22; Hill v. Jackson (Tex.Civ.App.) 51 S.W. 357.

■ The deed described the interest or property conveyed as follows:

" * * * All interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Hutchinson County, Texas, to-wit: being all of the interest in and to all of the oil, gas and other minerals as inherited by Clyde H. Holtzclaw from Betty B. Holtzclaw and being all of the interest of Betty

B. Holtzclaw in and to the oil, gas, minerals and real property of the W. B. Haile Estate as such interest is shown of record in the Probate Records and Deed Records of Hutchinson County, Texas, to which reference is made for a full description of the interest and title herein conveyed * * *."

We think the description was sufficient under the following authorities: Pena v. Frost National Bank (Tex.Civ.App.) 119 S.W.2d 612 (Error Ref.); Smith v. Westall, 76 Tex. 509, 13 S.W. 540; Harris v. Broiles (Tex.Civ.App.) 22 S.W. 421; Texas Consolidated Oils v. Bartels (Tex.Civ.App.) 270 S.W.2d 708 (Error Ref.).

Appellee concedes that the fact the deed in question was acknowledged by Byrum H. Haile, one of the appellants, and one with an interest in the estate, does not in itself render the deed void; but contends this ground, taken with the other facts and circumstances should be considered in setting aside the deed as void. This contention is without merit. Appellee admitted the validity of his signature on the deed. Deeds of grantors are valid as between the parties, grantor and grantee, without a valid certificate of acknowledgment except where the grantor is a married woman. Hill v. McIntyre Drilling Co., (Tex.Civ.App.) 59 S.W.2d 193 (Error Ref.) First State Bank in Caldwell v. Stubbs (Tex.Civ.App.) 48 S.W.2d 446.

For the reasons given, the portions of the judgment of the trial court which declared Clyde H. Holtzclaw the owner of an undivided one-ninth (⅑) of the described properties as sole devisee under the will of Betty B. Holtzclaw, subject to a life estate of Irene Haile in ²⁄₁₁ of said ⅑; and that which awarded appellee damages on his claim of ⅑ of ²⁄₁₁ for the four years next preceding the filing of this suit; and the denial of relief sought by appellants on their cross-action are in all things affirmed. That portion of the trial court's judgment which set aside the deed in question is reversed and remanded to the trial court for a new trial on the issue of mental capacity of Clyde H. Holtzclaw in accordance with this opinion.

Affirmed in part and reversed and remanded in part.

NORTHCUTT, J., not participating.